## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| E.K.D. , by her next friend Melissa K. Dawes, and C.M.D., by his next friend Jennifer E. DeYong, individually and on behalf of all others similarly situated, ) ) ) ) ) ) Plaintiffs, ) ) vs. ) ) FACEBOOK, INC., ) ) Defendant. ) ) | Cause No: 3:11-cv-00461-GPM-SCW<br><br>CLASS ACTION |

### ORIGINAL COMPLAINT

COME NOW Plaintiffs, individually, and on behalf of all others similarly situated**,** by and through their undersigned counsel, on information and belief, and for their Complaint against Defendant FACEBOOK, INC. state as follows:

1. Defendant has and continues to knowingly use the names and photographs of children to advertise products and services, without their consent, in violation of state law. This suit seeks to recover statutory damages as provided by law.

### PARTIES, JURISDICTION AND VENUE

2. E.K.D. is the minor child of Melissa K. Dawes both of whom are natural persons and citizens and residents of the Southern District of Illinois.

3. C.M.D. is the minor child of Jennifer E. DeYong both of whom are natural persons and citizens and residents of the Southern District of Illinois.

4. All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiffs and the proposed plaintiff class(es), and vice versa.

5. The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

6. Defendant is a citizen of California and Delaware as defined by 28 U.S.C. § 1332(c) as it is a Delaware company with its principal place of business in California.

7. Defendant operates an interactive website, facebook.com, from datacenters located throughout the Country.

8. Defendant is a resident of the Southern District of Illinois as it is has ongoing and systematic contacts with residents of the Southern District of Illinois. Defendant has, at all material times, conducted business including the operation of interactive websites with and the sale of advertising to residents of the Southern District of Illinois. Moreover, Defendant has specifically targeted the residents of Illinois as users and advertisers such that sufficient minimum contacts exist with the State of Illinois that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

9. When reference in this Complaint is made to any act or omission of Defendant, it should be deemed to mean that the officers, directors, agents, employees, or representatives of Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

**STATEMENT OF FACTS**

10.     Facebook is a social networking service and website launched in February 2004 that is operated and privately owned by Facebook, Inc. Registration with facebook requires the providing of a name, gender, date of birth and a valid email.

11.     Registered Users are asked to also provide the name of their high school, college, and employer to create a User profile. Users can expand their profile by adding information about various interests and hobbies. They can also add contact information including address, website, email and phone numbers. Users may add other users as "friends" and exchange messages, including automatic notifications when they update their profile.

12.     Sources estimate that as of April 2010 41.6% of the U.S. population has a facebook account. Although originally only open to students at certain universities, facebook opened itself to high-school-aged users in September 2005 and on September 26, 2006, to everyone 13 and older with a valid email address. Sources estimate more than 14 million U.S. residents under the age of 18 are facebook users.

13.     Facebook distinguishes itself from other social media sites by requiring that users utilize their true identity, a demand that MySpace does not make.  For example, facebook publicly states:

> Facebook has always been based on a real name culture. This leads to greater accountability and a safer and more trusted environment for our users. It's a violation of our policies to use a fake name or operate under a false identity, and we encourage people to report anyone they think is doing this, either through the report links we provide on the site or through the contact forms in our Help Center. We have a dedicated User Operations team that reviews these reports and takes action as necessary. We will consider removing a profile if we determine that it is not authentic and false information is being communicated on it. We also have technical systems in place to flag and block potential fakes based on name and anomalous site activity.

14. Facebook is free to users, and generates revenue from advertising that is targeted to Users based on User profiles, demographics, and in some instances information culled from Users' personal data and/or their friends' data.

15. Internet advertising revenue is generally priced either according to the response, measured by clicks associated with the advertisement or on the basis of the number of users to whom the advertisement is presented. As a result, facebook works to increase the exposure of, and response rate to, its advertisements.

16. One way in which facebook works to increase its user-base and response rate and thus its advertising revenues is by using the names and likenesses of its users to advertise its services and other products and services for which it is paid to promote.

17. Facebook accomplishes this by collecting personal information from its users, (name, picture, friends, brand preferences), combining that information with additional information provided by its paid advertisers and applying that data to facebook designed templates to produce its "targeted" or "enhanced" advertisements.

18. Facebook promotes the ability to use its use this personal data to market products and services by stating:

> "Friends of connections" targeting allows you to target the friends of users already connected to your onsite content. Connections are fans of your Page, users who have RSVP'd "Yes" or "Maybe" to your Event, members of your Group, and users who have interacted with your Application.
>
> When people see ads for Pages, Events and Apps their friends have already connected with, the ads will be personalized with the names of those friends. This generates powerful word of mouth for your business or brand.
>
> In addition to harnessing the social graph by targeting your connections' friends, every "Friends of connection" targeted ad promoting a Page or Event includes social content about a friend's interaction with your business, amplifying the relevancy of your ad. Let's take a look at an example. Annie likes the Etsy Page. When Etsy wants to promote their Facebook Page, they can choose to target an ad to Annie's friends by selecting the "Friends of connection" filter. Annie's friends will receive the Etsy ad with the following

sentence: "Annie likes this Page." Annie's friends are naturally more interested because Annie's interaction with Etsy is showcased directly in the ad.

19. Facebook explains the appearance of their friends in advertisements by stating:

"With Facebook Ads for Pages, Events and Apps, you may see stories about actions your friends have taken on Facebook attached to ads you see. For example, you might see a story about a friend who already likes a Page that you're seeing advertised. Similarly, your friends might see stories about you that relate to the ads they're seeing."

20. However, state law prohibits the unauthorized use of a person's name or likeness for commercial purposes. *See e.g.*, Restatement (Second) of Torts § 652C (1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."); *Invasion of privacy by use of plaintiff's name or likeness in advertising*, American Law Reports, 23 A.L.R.3d 865 ("One whose name or likeness is used, without his consent, in advertising, has a right to recover for an invasion of privacy."); Cal.Civ.Code § 3344 ("any person who knowingly uses another's name ... photograph or likeness in any manner ... for the purposes of advertising or selling or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated this section shall be liable to the injured party or parties in an amount equal to the greater of ... $750.00 or the actual damages suffered by him or her as a result of the unauthorized use.");[1] Ohio Rev. Code Ann. § 2741.02-.07 ("a person shall not use any aspect of an individual's persona for a commercial purpose." "A person who violates [this section] is liable in a civil action to the person injured by the violation for ... statutory damages in the amount of at least [$2,500]."); Nevada Rev. Statutes § 597.810 ("any commercial use of the name, ...photograph or likeness of another by a ...corporation without first having

---

[1] Facebook's terms of membership provide that California law will govern any disputes brought by its users.

5

obtained written consent for the use is subject to ...actual damages, but not less than $750.00; and ... exemplary or punitive damages...); 765 ILCS 1075 ("A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent."... "A person who violates [this section] may be liable for ... $1,000."); Ind. Code Ann. § 32-36-1-8; - 10 ("A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime ... without having obtained previous written consent." "A person who violates [this section] may be liable for ... Damages in the amount of ...$1,000").

21. As a result, facebook's non-negotiable terms of membership provide that its users consent to use of their names and likenesses in advertising by agreeing that: "Your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place."

22. However, at all times relevant hereto, Plaintiffs were minor children and as such lack the capacity to consent to the use of their name and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services.

23. Nonetheless, Defendant used and continues to use Plaintiffs' name and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services knowing that Plaintiffs, as minors, lack the capacity to consent to such use and without obtaining consent of Plaintiffs' parents or guardians.

## CLASS ACTION ALLEGATIONS

24. This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure. The proposed class is defined as follows:

> All facebook users, who during a time that facebook records identified them to be under the age of 18, had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

> Alternatively, Plaintiffs seek certification of a class defined as follows:

> All facebook users, who during a time that facebook records identified them to be under the age of 18 and a resident of California, Ohio, Nevada, Illinois, or Indiana and had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

> Specifically excluded from all proposed classes are: any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

25. The exact number of the members of the class (or sub-classes) is not presently known, but is so numerous that joinder of individual members in this action is impracticable. The exact number of the members of the class (or sub-classes) can only be ascertained through discovery, because such information is in the exclusive control of Defendant. However, based on the nature of the activities alleged herein, Plaintiffs believe that the members of the class (or sub-classes) number at least in the hundreds of thousands and are geographically dispersed throughout the United States. The names and addresses of the members of the class (or sub-classes) are readily obtainable from the Defendant and its agents and on information and belief are maintained in the computer database of Defendant and are easily retrievable.

26. Plaintiffs will fairly and adequately protect the interests of the class (or sub-classes) and have retained counsel that are experienced and capable in class action litigation, and in the fields of technology and consumer law. Plaintiffs understand and appreciate their duties to

the class (or sub-classes) under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class (or sub-classes).

27. Plaintiffs are asserting claims that are typical of the claims of each member of the class (or sub-classes) they seek to represent, in that the claims of all members of the class (or sub-classes), including Plaintiffs, depend upon a showing of the Defendant's unlawful practices. All claims alleged on behalf of the class (or sub-classes) flow from this conduct as well. Further, there is no conflict between any Plaintiff and other members of the class (or sub-classes) with respect to this action.

28. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. Questions of law and fact arising out of Defendant's conduct are common to all members of the class (or sub-classes), and such common issues of law and fact predominate over any questions affecting only individual members of the class (or sub-classes).

29. Common issues of law and fact include, but are not limited to, the following:

   a. Whether Defendant's acts or practices constitute misappropriation;
   b. Whether Defendant acted with consent;
   c. What state law(s) govern;
   d. Whether Plaintiffs and the members of the class (or sub-classes) have sustained damages and the proper measure of such damages; and
   e. Whether Plaintiffs and the members of the class (or sub-classes) are entitled to punitive damages and/or civil penalties.

30. The relief sought is common to the entirety of the class (or sub-classes).

31.     Defendant has acted on grounds generally applicable to the class (or sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class (or sub-classes) as a whole.

32.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendant.

33.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

    a. significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

    b. the size of the individual damages claims of most members of the class (or sub-classes) is too small to make individual litigation an economically viable alternative, such that few members of the class (or sub-classes) have any interest in individually controlling the prosecution of a separate action;

    c. without the representation provided by Plaintiffs herein, few, if any, members of the class (or sub-classes) will receive legal representation or redress for their injuries;

    d. class treatment is required for optimal deterrence;

    e. despite the relatively small size of the claims of many individual members of the class (or sub-classes), their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

    f. no unusual difficulties are likely to be encountered in the management of this class action;

    g. plaintiffs and the members of the class (or sub-classes) have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct;

    h. absent a class action, Defendant will likely retain millions of dollars received as a result of its wrongdoing, and its illegal, unfair, false and misleading conduct shall go unremedied and uncorrected; and

    i. absent a class action, the members of the class (or sub-classes) will not receive restitution, will continue to suffer losses, and Defendant will be allowed to retain the proceeds of its ill-gotten gains.

35. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class (or sub-classes), and result in judicial consistency.

## COUNT I

36. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 35 as if fully set out herein.

37. At all times relevant hereto, Plaintiffs were minor children and facebook users.

38. Defendant used and continues to use Plaintiffs' name and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services knowing that Plaintiffs, as minors, lack the capacity to consent to such use.

39. Further, Defendant knowingly used and continues to use Plaintiffs' name and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services without the consent of Plaintiffs' parents or guardians and knowing that it had not obtained consent of Plaintiffs' parents or guardians.

40. Defendant gained pecuniary benefit from the unauthorized use of Plaintiffs' names and photographs. These acts resulted in Defendant receiving millions of dollars in revenue as a result of its illegal activities.

41. As a direct and proximate result of the Defendant's misappropriation, Plaintiffs and Class Members suffered actual damages, including lessening the value of Plaintiffs' personal information, identity and likeness.

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendant as follows:

    a. Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

    b. Declaring:
        1) Defendant's acts constitutes an Illegal act or practice within the meaning of State law; and

        2) Plaintiffs are entitled to statutory damages as a result.

    c. Awarding Plaintiffs and Class Members statutory damages, pre- and post-judgment interest, costs of suit, and attorneys' fees.

**KOREIN TILLERY**

/s Aaron M. Zigler
Steven A. Katz
Aaron M. Zigler
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri  63101-1625
Telephone:     (314) 241-4844
Facsimile:      (314) 214-3525
skatz@koreintillery.com
azigler@koreintillery.com
***Attorneys for Plaintiffs***