IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| E.K.D., by her next friend Melissa K. | ) | |
| Dawes, and C.M.D., by his next friend | ) | |
| Jennifer E. DeYong, individually and on | ) | |
| behalf of all others similarly situated, | ) | Cause No: 3:11-cv-00461-GPM-SCW |
| | ) | |
| Plaintiffs, | ) | CLASS ACTION |
| | ) | |
| vs. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR MORE DEFINITE STATEMENT OR DISMISSAL**

I. **INTRODUCTION**

Facebook is a free social networking website that enables "Users" to connect with their chosen networks of friends and family (the User's "Friends"). Users need not "post" anything to use Facebook, but if they choose to do so, they may share virtually anything—vacation photos, news of their day, opinions on world events, what brand of shoes they like, etc. One thing that Users commonly do on Facebook is tell their Friends that they like something, such as the Facebook page set up by a political figure, product, or cause, by clicking on a button labeled "Like" that is associated with that content. When a User does this, if the User's privacy settings allow, the User's "Like" statement (e.g., "Jane Smith likes Unicef") may be published to the User's Friends. As one court recently observed, "Facebook exists because its users *want* to share information—often about themselves—and to obtain information about others."[1]

Plaintiffs' putative class action complaint (the "Complaint") alleges that Facebook has

---

[1] *Cohen v. Facebook, Inc.*, --- F. Supp. 2d -----, No. 10-cv-05282-RS, 2011 WL 3100565, at *1 (N.D. Cal., June 28, 2011).

violated "state law" by using the names and likenesses of Users under the age of 18 "to advertise products or services," without obtaining their parents' consent.  The bases for Plaintiffs' claims are never articulated, but Plaintiffs appear to allege that Facebook republished Users' voluntary "Like" statements, and their names and likenesses, alongside paid advertisements.  (*See*, *e.g.*, Compl. ¶¶ 18, 19.)  The Complaint nowhere specifies what state laws this alleged conduct violates and, instead, pleads a single, unnamed count, asserting that Facebook's use of Users' names and likenesses is "unauthorized" and "illegal."  Indeed, the sole paragraph in the Complaint mentioning any law at all does so only in a "*See e.g.*" string citation.  (*Id.* ¶ 20.)

Plaintiffs' Complaint fails as a matter of law for numerous reasons.  *First*, Plaintiffs' vague references to unspecified "state law" render their claims unintelligible, prejudice Facebook's ability to prepare its defense, and will hinder the Court's efforts to evaluate the sufficiency of Plaintiffs' claims. This defect requires dismissal and a more definite statement under Federal Rule of Civil Procedure 12(e).  *Second*, Plaintiffs fail to allege any cognizable injury in fact, which is the fundamental requirement of Article III standing.  *Next*, Plaintiffs' claim against Facebook is precluded by two federal statutes: the Communications Decency Act, 47 U.S.C. § 230  ("CDA Section 230") and the Children's Online Privacy Protection Act of 1998, 15 U.S.C. §§ 6501-08 ("COPPA").  *Finally*, even if the Complaint is (liberally) construed as making a claim under Illinois or California law, because Facebook's alleged republication of a User's "Likes" is newsworthy, it is exempt from liability under the statutes mentioned in Plaintiffs' string citation.  This same defense applies to the other states' laws cited as well, and, just as importantly, these Illinois Plaintiffs lack standing to bring claims under the laws of Indiana, Nevada, and Ohio.

For all the reasons, the Court should dismiss the Complaint with prejudice.

## II.    STATEMENT OF FACTS[2]

Facebook operates a free social networking website that allows Users aged thirteen and older to share information about themselves and to communicate with one another.  (Compl. ¶¶ 12, 14).  To join, Users need only provide their name, gender, date of birth, and a valid email address. (*Id.* ¶ 10.)  To use the site, Users need not post any information about themselves or others, or post anything at all.[3]  However, Users may, if they so choose, add information about their interests and hobbies to their "profile."  (*Id.* ¶ 11.)  According to Plaintiffs, a User may add other Users as Facebook "Friends" and send "automatic notifications" to their Friends when a User takes an action that changes his or her profile page.  (*Id.*)

On Facebook, Users can express their affinity for or make a connection with particular content by clicking on a button labeled "Like" that is associated with that content.  (*Id.* ¶¶ 11, 18.)  The message that the User "Likes" the content is then displayed to his or her Friends as an "automatic notification" that the User updated her profile.  (*Id.*; *see also* Ex. A[4] (when a User "Likes" a website, product or service, the User's Friends "will get a notification that [the User] liked" the content);  Ex. B (Facebook may display the User's social actions such as "liking" a Page to Friends).)  Later, the User's Friends may also see a republication of the statement that the User "Likes" some content alongside an advertisement for that content.  (Compl. ¶ 19.)  For example, if a User named Annie "Likes" the Facebook page set up by the company Etsy (i.e., "Likes the Etsy Page"), that statement: (i) may be shared with Annie's Friends and (ii) may also be redisplayed to the same Friends alongside an advertisement for Etsy's website.  (*See id.* ¶

---

[2] This Statement of Facts is based on the allegations in the Complaint, which Facebook assumes are true for the purposes of this Motion but does not thereby admit.

[3] Users may also, but are not required to upload a "profile photo," which may be an image of themselves or of anything else (e.g., a pet, a landscape, a cartoon character, etc.).

[4] References to "Exhibit [X]" or "Ex. [X]" refer to Exhibits to the Declaration of Matthew D. Brown ("Brown Decl."), filed herewith.

18.)[5]

Plaintiffs are alleged to be Facebook Users who are teenagers residing in Illinois.  (*Id.* ¶¶ 2-3, 37.)  Plaintiffs assert a single cause of action ("Count I") under unspecified "State law."  (*Id.* ¶¶ 36-41, Prayer for Relief.)  They allege that Facebook used their names and likenesses "for the purpose of marketing, advertising, selling, and soliciting the purchase of goods and services." (*Id.* ¶ 23.)  Plaintiffs do not allege that they "Liked" or shared any content with their Friends on Facebook, nor that their profile pictures actually contained their likenesses.  Plaintiffs apparently acknowledge that they "consent[ed] to [Facebook's] use of their names and likenesses in advertising" (*id.* ¶ 21), but they now complain that Facebook did not obtain "consent of [their] parents or guardians" (*id.* ¶ 39).  Plaintiffs also claim that Facebook gained a pecuniary benefit from the allegedly unauthorized use of their names and photographs, and that they suffered damages, including "lessening the value of Plaintiffs' personal information, identity and likeness."  (*Id.* ¶¶ 40, 41.)  Plaintiffs do not allege that their personal information had any ascertainable "value" or any facts supporting the claimed "lessening" of that value.

## III.  ARGUMENT

### A.  The Court should dismiss the Complaint and require Plaintiffs to refile it with a more definite statement of their claims under FRCP Rule 12(e).

Under Federal Rule of Civil Procedure 12(e), a court may order "a more definite statement of a pleading … which is so vague or ambiguous that the [defendant] cannot reasonably prepare a response."  Fed. R. Civ. Proc. 12(e).  A complaint should be dismissed if it lacks "intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is."  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775

---

[5] Facebook does not disclose to advertisers which Users have "Liked" their content.  Instead, Facebook targets advertisements based on compilations of information to which advertisers do not have access.  In this example, Etsy would not learn that Annie liked its content, nor would it learn to whom its advertisements were delivered.

(7th Cir. 1994).  Plaintiffs' Complaint should be dismissed pursuant to Rule 12(e).

Fundamentally, the Complaint fails to apprise Facebook or the Court of the specific claims being asserted.  At the start of the Complaint, Plaintiffs allege that Facebook's conduct is "in violation of *state law*" and Plaintiffs seek "to recover statutory damages as provided *by law*." (Compl. ¶ 1 (emphasis added).)  In Plaintiffs' prayer for relief, they similarly seek a declaration that Facebook's alleged conduct was illegal "within the meaning of *State law*."  (*Id.*, Prayer for Relief (emphasis added).)  Plaintiffs' sole count sheds no light on these ambiguities, as it merely claims that Facebook's alleged conduct was "unauthorized" and "illegal."  (*Id.* ¶ 40.)  Elsewhere in the Complaint, Plaintiffs vaguely assert that "state law prohibits the unauthorized use of a person's name or likeness for commercial purposes."  (*Id.* ¶ 20.)  But this allegation engenders even more confusion, as it is followed by a "*See e.g.*" string citation to the Restatement (Second) of Torts, American Law Reports, a single Illinois statute, and statutes from four states (California, Indiana, Nevada, and Ohio) in which neither Plaintiff resides.  (*Id.*)  Apart from paragraph 20, Plaintiffs never again reference any state laws.

Courts in the Seventh Circuit have repeatedly required plaintiffs to clarify ambiguous or unintelligible allegations concerning the law(s) under which they seek relief.  *See, e.g.*, *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282-83 (7th Cir. 2002) (requiring plaintiff to replead complaint because of "confusing reference to 'Illinois Public Policy'"); *Dorman v. Caffey*, No. 08-cv-254, 2008 WL 4619802, at *2 (S.D. Ill. Oct. 17, 2008) (allegation of "other law violations" was too "vague and conclusory" to state claim); *Chaney v. City of Chi.*, No. 95 C 1979, 1996 WL 718519, at *7 (N.D. Ill. Dec. 12, 1996) ("unspecified Illinois common law claims"). *see also Varnagis v. City of Chi.*, No. 96 C 6304, 1997 U.S. Dist. LEXIS 9031, at *5 (N.D. Ill. June 18, 1997); *McClellan v. Hinojosa*, No. 3:10-CV-1089-B, 2010 U.S. Dist.

LEXIS 119340, at *3-4 (N.D. Tex. Nov. 9, 2010).[6]

Even if Plaintiffs' Complaint were (generously) construed as pleading a violation of each of the individual laws identified in the string citation in paragraph 20, Plaintiffs nowhere set forth the elements required to prove a violation under any of the listed laws nor allege how those elements are met here. This "shotgun" approach is impermissible because the Complaint makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," and fails to "present each claim for relief in a separate count, as required by Rule 10(b)[.]" *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) (describing impermissible "shotgun" pleadings). Courts routinely require plaintiffs to replead such complaints to relieve the defendant and trial judge of "'the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses.'" *Id.* (quoting *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)); *see also, e.g.*, *Buerger v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249-50 (E.D. Tex. 1997) ("court cannot assume the role of Plaintiff's advocate and survey the federal and State laws to determine what causes of action he may allege in good faith"). Here, Plaintiffs' mere mention of five different state statutes amounts to no more than a "conglomeration of legal theories," which is insufficient under Rule 8(a). *See Sennett v. Oppenheimer & Co.*, No. 78 C 1418, 1979 U.S. Dist. LEXIS 15144, at *1 (N.D. Ill. Jan. 11, 1979). Indeed, Plaintiffs' string citation of state laws is preceded by "*See e.g.,*" indicating that Plaintiffs have other, as of yet unnamed, violations of law in mind as well.

*Young v. Wells Fargo & Co.* is directly on point. 671 F. Supp. 2d 1006, 1016-17 (S.D.

---

[6] Although a court can excuse a plaintiff's failure to plead the correct legal theory, *see, e.g.*, *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992), that principle does not control here. Facebook's Rule 12(e) motion is based on the ambiguity Plaintiffs' vague and open-ended claims engender. *See, e.g.*, *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 725 (7th Cir. 1986) (suggesting that motion under Rule 12(e) is "the proper course" when "inscrutable" allegations raise ambiguity about the legal violations alleged).

Iowa 2009). In *Young*, the court found that one count of the plaintiffs' complaint presented a "laundry list" of allegedly applicable statutes," but "lack[ed] an application of the factual allegations to the numerous causes of action listed." *Id.* at 1015-16. In the court's view, that count was an impermissible "shotgun pleading," as it listed numerous statutes without "specify[ing] how those statutes protect against the activities set forth in Plaintiffs' allegations . . . ." *Id.* at 1016. The court went on to reject two other counts of the complaint, which pled "the general elements" of common law fraud and unjust enrichment, respectively, but "failed to specify the states' laws under which they intend[ed] to bring these common law claims." *Id.* at 1016-17. The court ruled that,"[w]ithout reference to the law of any particular state, the common law claims in [these counts] are so vague that [the defendant] cannot reasonably prepare a response." *Id.* at 1017. The court required the plaintiffs to replead all three counts. *See id.*

As *Young* demonstrates, the Court should dismiss Plaintiffs' Complaint and require them to replead with a more definite statement of their claims. *Davis v. Ruby Foods, Inc*., 269 F.3d 818, 820-21 (7th Cir. 2001) (unintelligible complaint should be dismissed, rather than supplemented, so that plaintiff's claims are contained in "one compliant document").

### B.      The Complaint does not adequately plead Article III standing.

It is axiomatic under Article III that Plaintiffs must allege an injury in fact to pursue a claim in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (plaintiffs must allege that (1) they suffered an injury in fact; (2) there is a causal connection between the injury and the alleged conduct; and (3) the injury may be redressed by a favorable decision); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (an injury in fact must be "distinct and palpable," not "abstract"). Moreover, in a putative class action, each named plaintiff must establish that he or she personally suffered an injury and thus, has standing.

*O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (named plaintiff cannot "piggy-back on the injuries of the unnamed class members").

The Complaint alleges that Facebook violated Plaintiffs' rights by using their names or likenesses without authorization.  (*See*, *e.g.*, Compl. ¶ 23.)  This generalized allegation appears to be based on nothing more than the fact that Plaintiffs were Facebook Users.  Plaintiffs do not allege which advertisements their names or likenesses were purportedly used in connection with, nor when the advertisements appeared.  Plaintiffs do not even allege that they took any action on Facebook, such as electing to "Like" a Facebook page, that could have resulted in their names or likenesses being used alongside an advertisement.  Similarly, although Plaintiffs allege Facebook used their "photographs," they do not allege that such photos contained their likenesses or otherwise identified them as individuals.  These allegations are insufficient to confer standing because they fail to show that Plaintiffs were personally injured by Facebook's alleged use of User names and likenesses.  *See Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979) ("In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury."); *see also Payton*, 308 F.3d at 682; *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011); *Gaos v. Google, Inc.*, No. C. 10-04809 JW, slip. op. at p. 5 (N.D. Cal. April 7, 2011) (Ex. E).

Even if Plaintiffs had alleged facts supporting the claim that Facebook used their names or likenesses (which they did not), Plaintiffs nowhere specify what cognizable harm they have suffered.  Instead, the Complaint makes the conclusory claim that Plaintiffs "suffered actual damages, including lessening the value of Plaintiffs' personal information, identity and likeness." (Compl. ¶ 41; ¶ 34(g).)  These allegations are mere legal conclusions that the Court is not bound to accept.  *See, e.g., Twombly*, 550 U.S. at 555 (noting the court need not accept the truth of legal

conclusions couched as factual allegations).  Plaintiffs do not allege that their names or likenesses have any commercial value nor that they ever could have received payment for the use of their names or profile photos on Facebook.  At most, Plaintiffs allege Facebook *republished information they have voluntarily shared* with a specific audience ("Annie likes Etsy") *to the same audience* that likely already received Plaintiffs' statement.  (*See* Compl. ¶¶ 11, 18; *see also* Exs. A, B.)  But a User who already has shared content with his or her Friends *for free* cannot credibly claim to be owed money for the republication of the same content to the same people.  The Complaint fails to allege any facts showing how the challenged republication could have injured Plaintiffs and, because the User's voluntary post is virtually identical to the republished content (Compl. ¶ 18), no plausible allegation of injury is sustainable.

A recent decision from the Northern District of California rejected a claim of injury very similar to what Plaintiffs appear to claim here.  In *Cohen v. Facebook, Inc.*, the plaintiffs alleged that their names and likenesses were used without their consent to promote a utility that enables Users to find Facebook Friends.  --- F. Supp. 2d -----, No. 10-cv-05282-RS, 2011 WL 3100565, at *1 (N.D. Cal., June 28, 2011).  The plaintiffs sued for, among other things, violation of California Civil Code Section 3344, which is one of the statutes listed in Plaintiffs' string citation.  (Compl. ¶ 20.)  The *Cohen* court found that the plaintiffs' claims of injury were "conclusory" and that the plaintiffs had "not even alleged that they suffered 'injury to [their] feelings,'" which the Court stated is the "'gist' of a misappropriation claim."  *Cohen*, 2011 WL 3100565, at *5; *cf. Eick v. Perk Dog Food Co.*, 347 Ill. App. 293, 299 (1952) (Illinois's right against misappropriation was intended to compensate for "mental anguish").  Further, the Court ruled that Plaintiffs had not alleged "any cognizable harm, regardless of the extent to which [the challenged use] could also be seen as an implied endorsement by them of the service."  *Cohen*,

2011 WL 3100565, at *5.  The Court dismissed the plaintiffs' claims with leave to amend, and ruled "plaintiffs must, at a minimum, plead that they *suffered mental anguish* as a result of the alleged misappropriation, and *a plausible supporting factual basis* for any such assertion."  *Id.* at *6 (emphasis added).  Like the plaintiffs in *Cohen*, Plaintiffs here have pled neither "mental anguish" nor "a plausible supporting factual basis for any such assertion."  *Id.*

Plaintiffs have not alleged any "distinct and palpable injury" and thus, do not have standing.  The Complaint should be dismissed.  *See Gladstone Realtors*, 441 U.S. at 100.[7]

**C.       The Complaint fails to state any claim for relief.**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint. *Johnson v. Rivera,* 272 F.3d 519, 520-21 (7th Cir. 2001).  Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'"  *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  Although this Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff, the Court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts in the complaint that undermine the plaintiff's claims.  *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).  Here, it is clear that the Complaint does not state any plausible claim for relief.

---

[7] Plaintiffs' claim that Facebook earns revenue from advertising displayed alongside User-provided content does not alter this analysis. (Compl. ¶¶ 16, 18.)  That Facebook allegedly earns such revenue does not imbue Plaintiffs' names or likenesses with an ascertainable economic value.  *See Dwyer v. Am. Express Co.*, 273 Ill. App. 3d 742, 749 (1995) (cardholder name has "little or no intrinsic value"; instead, "[d]efendants create value by categorizing and aggregating" the names); *LaCourt*, 2011 WL 1661532, at *2 (rejecting claim that "[the plaintiffs'] personal information has discernable value, both to Defendant and to Plaintiffs and Class Members"); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (website's advertising revenue from personal information not an "economic loss to the subject").

### 1.  The Communications Decency Act § 230(c)(1) bars Plaintiffs' claims.

The Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA Section 230"), states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  State law actions interfering with this rule are expressly prohibited.  *Id.* § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").  In other words, no party can bring a suit that seeks to treat a website as the author of allegedly actionable content, where that content is authored by another party.  Facebook is entitled to CDA Section 230 immunity here because Plaintiffs seek to hold Facebook liable for displaying information provided by another party—Plaintiffs themselves—who chose to publish the statements alleged here (e.g., "Annie likes Etsy").

Congress enacted CDA Section 230 to "promote the continued development of the Internet and other interactive computer services" and "preserve the vibrant and competitive free market that presently exists for the Internet … unfettered by Federal or State regulation."  47 U.S.C. §§ 230(b)(1)–(2).  The statute bars any state actions which seek to impose liability on an interactive computer service for publishing content provided by another.  *See, e.g.*, *Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 519 F.3d at 666, 671 (7th Cir. 2008); *Blockowicz v. Williams*, 675 F. Supp. 2d 912, 914-15 (N.D. Ill. 2009); *Stayart v. Yahoo!, Inc.*, 651 F. Supp. 2d 873, 888 (E.D. Wisc. 2009) (granting Yahoo CDA immunity against right of publicity claims); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-68 (N.D. Ill. 2009).  CDA Section 230 immunity should be determined "at the earliest possible stage."  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-58 (4th Cir. 2009).

CDA Section 230 provides immunity from any claim which (1) treats an interactive

computer service, (2) as a publisher or speaker (3) of information provided by another information content provider.  *See* 47 U.S.C. § 230(c)(1); *Dart*, 665 F. Supp. 2d at 965-66. These elements are all met here.  *First*, Facebook is an "interactive computer service," defined as "any information service … that provides or enables computer access by multiple users to a computer server[.]"  *See* 47 U.S.C. § 230(f)(2); *Young v. Facebook, Inc.*, No. 5:10-cv-03579, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010) (granting Facebook's motion to dismiss under CDA Section 230); *Collins v. Purdue Univ.*, 703 F. Supp. 2d 862, 878 (N.D. Ind. 2010) (websites generally deemed interactive computer services).  *Second*, Plaintiffs' claims seek to treat Facebook as the "publisher or speaker."  *See Dart*, 665 F. Supp. 2d at 968 ("[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability." (citation omitted)).  Indeed, Plaintiffs' entire case appears to rest on the notion that Facebook wrongfully republished Users' statements on Facebook, with their names, and/or likenesses, alongside advertisements for content the User has "Liked."  (Compl. ¶¶ 18, 19, 23.)

*Third*, the content that Facebook is accused of improperly publishing was provided by "another information content provider," namely, the Users themselves.[8]  Plaintiffs appear to allege that Facebook wrongfully displayed advertisements for third-party content along with the names and likenesses of Users who had previously published that they "Liked" that content, or had taken some other action on the site to "connect" to that content.  (*Id.* ¶¶ 18-19.)  Again, using the only example provided in the Complaint, Plaintiffs allege that a User's Friend may see an advertisement for the web page Etsy, along with the true statement "Annie likes this page" *if*

---

[8] That Plaintiffs complain about the display of *their own* statements does not lessen a website's immunity.  *See Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (no liability where minor plaintiffs challenged publication of their own information); *Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. 2009); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009).

Annie previously "Like[d]  the Etsy Page."  (*Id.* ¶ 18; *see also id.* ¶ 17 (Facebook utilizes User's "brand preferences"); *id.* ¶ 19 ("you might see a story about a friend who already likes a Page that you're seeing advertised").)  Although it contains few factual allegations, the Complaint does make clear that Users provide their names, their profile photos (if any), and the statements that they "Like" content on Facebook.  (*Id.* ¶¶ 10, 17, 18, 19.)  Yet it is the republication of precisely this *User-supplied content* for which Plaintiffs appear to allege Facebook is liable.

Thus, because Plaintiffs' claims seek to treat Facebook as the publisher of Plaintiffs' own content, CDA Section 230 requires dismissal of those claims with prejudice.

### 2.     The Children's Online Privacy Protection Act bars Plaintiffs' claims.

The Complaint is also preempted by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501-08.  COPPA requires an "operator of a website or online service," to obtain parental consent before it "collects" or "use[s]" the "personal information" of a "child" *only* where the child is "under the age of 13." §§ 6501(1), 6502(a); 16 C.F.R. § 312.5(a).[9]  Plaintiffs' Complaint is directed exclusively at minors *over* the age of 13, and it is therefore inconsistent with, and preempted by, the regulatory scheme established by Congress.

This conclusion follows from the structure of the statute and its legislative history.  In adopting this framework, Congress considered *and rejected* a parental consent requirement for minors aged 13 to 17, deferring in large part to teenagers' First Amendment rights to access and communicate over the internet.  *See* S. 2326, 105th Cong. § 3(a)(2)(A)(iii) (1998) (Ex. G).  The FTC's account is highly instructive:

In  the  course  of  drafting  COPPA,  Congress  looked  closely  at  whether

---

[9] Names and photographs constitute "personal information" within the meaning of COPPA.  15 U.S.C. § 6501(8); *see also, e.g.*, Complaint, *United States v. Sony BMG Music Entm't*, No. 08-CV-10730-LAK, ¶ 17 (S.D.N.Y. Dec. 10, 2008) (FTC Complaint alleging that website posted minors' personal information, "including any photos they may have uploaded") (Ex. F).

adolescents should be covered by the law, ultimately deciding to define a "child" as an individual under age 13.  This decision was based in part on the view that most young children do not possess the level of knowledge or judgment to make appropriate determinations about when and if to divulge personal information over the Internet.  The FTC supported this assessment.

While this parental notice and consent model works fairly well for young children, the [FTC] is concerned that it may be less effective or appropriate for adolescents. … [C]ourts have recognized that as children age, they have an increased constitutional right to access information and express themselves publicly.

*See* Testimony of the FTC before Subcomm. on Consumer Prot., Prod. Safety, & Ins., July 15, 2010, at 14-15 (citations omitted) (Ex. H); *see also* FTC, Frequently Asked Questions about the Children's Online Privacy Prot. Rule (revised Oct. 7, 2008) (hereinafter "COPPA FAQ"), No. 8 (Ex. I).  COPPA thus reflects Congress's considered decision that minors aged 13 to 17 should *not* be required to obtain parental consent before sharing their "personal information" with a "website or online service," such as Facebook, or before a website or online service such as Facebook may "use" such information.

Critically, COPPA expressly preempts state law that treats the use of private information in a manner that is "inconsistent" with the framework established by Congress:

No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).  This broad preemption clause reflected "Congress['s] [] conclu[sion] that a uniform national standard was necessary and desirable." S.A. Millar, *Maine Kids' Privacy Law Conflicts With COPPA*, Martindale Hubbell (Aug. 5, 2009) (Ex. J).  Nonetheless, contrary to COPPA's express command, Plaintiffs seek, through litigation, to create a parental consent requirement for teenagers' Internet use that lawmakers, for sound policy and First Amendment reasons, rejected.  (*See* Compl. ¶ 39.)  Indeed, because Facebook admittedly forbids children

under age 13 from using its site (*id.* ¶ 12),[10] Plaintiffs seek to hold Facebook liable for not obtaining parental consent for *the very group of minors* that Congress determined *should not* be subject to a parental consent requirement. Plaintiffs claim is, therefore, preempted.

> **3.     Plaintiffs fail to state a claim under the Illinois Right of Publicity Act, or the equivalent California statute, because those laws exempt newsworthy speech, such as a consumer opinion.**

As discussed above in Section III(A) above, Plaintiffs allege no violation of any particular statute. However, even if the Court were to construe the Complaint as asserting a claim under the Illinois Right of Publicity Act ("IRPA"), such a claim would fail as a matter of law. IRPA expressly exempts newsworthy speech from liability, providing that the statute is not violated by the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign [or] . . . promotional materials, advertisements, or commercial announcements for [such] a use[.]" *See* 765 Ill. Comp. Stat. 1075 §§ 35(b)(2), (b)(4). Facebook's republication, to the Users' Facebook Friends, of Users' "Likes" falls within this express exemption in the statute.

To state a claim under IRPA, Plaintiffs must establish (1) appropriation of the plaintiff's name or likeness; (2) without the plaintiff's consent; and (3) for another's commercial benefit. *See Blair v. Nev. Landing P'ship, RBG*, 369 Ill. App. 3d 318, 322 (2006). However, the Illinois Supreme Court has recognized that, even under the common law, misappropriation actions do not lie for uses of a name or likeness that involve a matter of public interest, which implicate First Amendment protections. *See Leopold v. Levin*, 45 Ill. 2d 434, 440 (1970) (noting that "the liberty of expression constitutionally assured in a matter of public interest" limits any right to privacy in the use of a name or likeness). The exemption under IRPA for news, public affairs

---

[10] If an Internet operator takes "reasonable measures to screen for age," the operator is "not responsible if a child misstates his or her age." *See* COPPA FAQ, No. 39 (Ex. I).

and other matters of public interest codified this limitation.  *See Best v. Berard*, --- F. Supp. 2d ---, No. 09-c-7749, 2011 WL 832234, at *4 (N.D. Ill. March 3, 2011) (matters of public interest enjoy First Amendment protection and fall under the exemption in 765 ILCS 1075/35(b)(2)).

What speech constitutes a "matter of public interest" is broadly construed, and applies even to entertainment, as "[t]he line between the informing and the entertaining is too elusive" to draw.  *See Best*, --- F. Supp. 2d ---, 2011 WL 832234, at *5 (quoting *Winters v. New York*, 333 U.S. 507, 510 (1948)); *see also Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011); *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2733 (2011) ("The Free Speech Clause exists principally to protect discourse on public matters, but we have long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try."); Restatement (Second) of Torts § 652D, cmt. j, p. 393 (a legitimate public concern "extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published").

Expressions of consumer opinion, such as the Plaintiffs' "Like" statements challenged here, have repeatedly qualified as matters of public interest under the First Amendment.  For instance, in *Concerned Consumers League v. O'Neill*, 371 F. Supp. 644, 648 (E.D. Wis. 1974), the court held that the First Amendment protected speech by consumers regarding the quality of a furniture store's reupholstering services.  The court reasoned that expressions of consumer opinion concern a matter of public interest, noting "the growth of 'consumerism' in the United States" and the public's interest in "improv[ing] their relative position vis-à-vis the [suppliers] and manufacturers of consumer goods."  *Id.*; *see also Lowe v. S.E.C.*, 472 U.S. 181, 210 n.58 (1985) (consumer opinion about commercial products such as loudspeakers and marketable securities are protected); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,* 425 U.S.

748, 764-65 (1976); *Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1544-45 (1991)

(consumer opinion about the quality of a developer's construction protected); *Morningstar, Inc.*

*v. Super. Ct.*, 23 Cal. App. 4th 676, 697 (1994) (opinions analyzing ads for financial products).

These decisions make clear that the alleged speech at issue here is a matter of public

interest.  When a User says he or she "Likes" certain content—whether it is the Facebook page

of a brand, a service, a politician, or a cause—that User is communicating to his or her Facebook

Friends an affinity for content that the User's Friends have an interest in receiving.  In such a

circumstance, the "free flow" of information from the speaker to the audience receiving the

communication "is indispensable."  *Va. State Bd. of Pharmacy,* 425 U.S. at 765.

*Facebook's* free speech rights also are implicated by Plaintiffs' claims.  As noted recently

by the Northern District of Illinois when analyzing IRPA's newsworthiness exemption, the First

Amendment's "core purposes" are implicated when civil liability "imposes sanctions on the

publication of truthful information of public concern."   *Best*, --- F. Supp. 2d ---, 2011 WL

832234, at *4 (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001)).  By republishing a

User's name or likeness along with the true statement—already shared with the User's Friends—

that he or she "Likes" certain content being advertised on its website, Facebook provides a forum

for authentic endorsements by persons who, without pecuniary motive, have expressed their

approval of a particular product, service, or cause.  This serves a particularly valuable public

interest because the information is republished only to the User's Friends—persons for whom a

User's opinion may be of particular interest, and with whom the User has already decided to

share that information.  Consequently, Facebook has a right under IRPA to republish information

that the courts have explicitly recognized relates to matters of public interest.

Moreover, Plaintiffs acknowledge that, under Facebook's terms, California law governs

all Users' disputes.  (Compl. ¶ 20, n.1.)  However, the newsworthiness exception just described

is also expressly embodied in the California law Plaintiffs reference, which provides "a use of a

name, voice, signature, photograph, or likeness in connection with any news, public affairs, or

sports broadcast or account, or any political campaign, shall not constitute a use for which

consent is required under subdivision (a)."  Cal. Civ. Code § 3344(d).  The term "newsworthy" is

also broadly construed under the California law and it extends "the use of names, likenesses or

facts in giving information to the public for purposes of education, amusement or enlightenment,

when the public may reasonably be expected to have a legitimate interest in what is published."

*See Shulman v. Group W Prod., Inc.*, 18 Cal. 4th 200, 225 (1998) (citing Rest. 2d Torts § 652D,

cmt. j, p. 393); *see also Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793

(1995); *Dora v. Frontline Video Inc.*, 15 Cal. App. 4th 536, 546 (1993).  The California Supreme

Court has, in fact, recognized that the "legitimate interest" analysis for the "newsworthiness" in

claims regarding public disclosure of private facts parallels the analysis in cases involving the

constitutional right to freedom of speech.  *See Shulman*, 18 Cal. 4th at 214-16.  Accordingly, a

claim under California's Civil Code Section 3344 fails on the same bases as a claim under IRPA.

### 4.    Plaintiffs lack standing to sue under the laws of any other state.

Even if the Court were to adopt an expansive reading of the Complaint, and construe it as

alleging violations of the individual state laws referenced in Plaintiffs' string citation, Plaintiffs

still lack standing to assert claims under the laws of states in which they do not reside.  Prior to

class certification, "the jurisdiction of the district court depends upon its having jurisdiction over

the claim of the named plaintiffs," because, until that point, "there is no class action but merely

the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Universal*

*Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).  Consequently, the named Plaintiffs

here—two Illinois residents (Compl. ¶¶ 2-3)—lack standing to bring claims on behalf of Users in

Indiana, Nevada, Ohio, or any other state (Compl. ¶ 20).[11]

*In re Potash Antitrust Litigation* is directly on point. 667 F. Supp. 2d 907 (N.D. Ill. 2009).  In *Potash*, certain of the named plaintiffs—residents of Iowa, Kansas, Mississippi, Florida, and Michigan—brought putative class claims "under the statutes and common law of forty-three other states, the District of Columbia, and Puerto Rico."  *Id.* at 923.  Defendants moved to dismiss on the ground that the plaintiffs lacked Article III standing to advance claims under the laws of any state in which no named plaintiff resided.  *Id.*  Based on an exhaustive analysis of Supreme Court and Seventh Circuit precedent, the court agreed, holding:

> To have standing as a class representative, the plaintiff must be part of the class, "that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." ... Here, the [] Plaintiffs present no allegations that they have suffered an "injury in fact" for each of the asserted claims.  Read in its most reasonable light, the [] Complaint alleges that an injury … was suffered in their respective states of residence. The [] Complaint does not allege personal injury in any other state, thus, [] Plaintiffs fail to satisfy their burden of showing Article III standing for states where they do not reside.

*Id.* at 924 (citations omitted).  Notably, the plaintiffs in *Potash* had urged the court to defer its decision on Article III standing until after class certification, contending that some Supreme Court and Seventh Circuit decisions supported that approach.  *Id.* at 923.  The court disagreed, concluding that Article III standing remained a "threshold" inquiry, even at the pre-certification stage, and it dismissed all the claims under the laws of states where the named plaintiffs did not reside.  *Id.* at 920-23*; see also Schultz v. Am. Family Mut. Ins. Co.*, No. 04 C 5512, 2005 WL 5909003, at *7 (N.D. Ill. Nov. 1, 2005) (dismissing claims based on wage laws of states other

---

[11] The exemption for "newsworthy" speech discussed in the previous section also is codified into these laws.  *See* Ind. Code Ann. § 32-36-1-1(c)(1) & (3) (exempting "[m]aterial that has … newsworthy value" and exempting use "in connection with reporting of an event or topic of general or public interest");  Nev. Rev. Stat. § 597.790 (exempting "use [] in connection with a news … broadcast or publication");  Ohio Rev. Code Ann. § 2741.09(A)(1)(b) (exempting "[m]aterial that has political or newsworthy value").

19

than Illinois); *Johnson v. Allstate Ins. Co.*, No. 07-CV-0781, 2010 WL 1325272, at *1 (S.D. Ill. Mar. 29, 2010) (permitting addition of out-of-state named plaintiffs with "standing to assert claims under the laws of other states and be class representatives for those claims").[12]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' claims fail as a matter of law. Facebook respectfully requests that the Court dismiss the Complaint with prejudice. Facebook also requests that the Court hear oral argument regarding this motion.

Date: August 1, 2011

Respectfully submitted,

/s/ Matthew D. Brown
Matthew D. Brown (*admitted pro hac vice*)       Charles Swartwout
Jeffrey M. Gutkin (*admitted pro hac vice*)       BOYLE BRASHER LLC
COOLEY LLP                                        5000 West Main Street
101 California Street, Fifth Floor                P.O. Box 23560
San Francisco, CA 94111-5800                      Belleville, IL 62223
Phone: (415) 693-2000                             Telephone: 618-277-9000
Fax: (415) 693-2222                               cswartwout@boylebrasher.com
brownmd@cooley.com
jgutkin@cooley.com

Attorneys for Defendant Facebook, Inc.

## CERTIFICATE OF SERVICE

I, Matthew D. Brown, an attorney, certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system on August 1, 2011, which will send notification and service of such filing to all counsel of record.

/s/ Matthew D. Brown

1229895/SF

---

[12] Decisions from around the country support the *Potash* view of standing. *E.g.*, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010); *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418-19 (E.D. Pa. 2009); *Cornelius v. Fidelity Nat'l Title Co.*, No. C08-754-MJP, 2009 WL 596585, at *9 (W.D. Wash. Mar. 9, 2009); *Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303, 06 CV 5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007).