
**KOREIN TILLERY**
Steven A. Katz
skatz@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844  Fax: (314) 241-3525

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| C.M.D., by his next friend Jennifer E. DeYong, T.A.B. by her next friend Patricia A. Isaak, H.E.W. & B.A.W., by their next friend Jami A. Lemons, and A.D.Y & R.P.Y., by their next friend Robert L. Young, Jr., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:12-cv-01216-LHK<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Courtroom:<br><br>Judge: Hon. Lucy H. Koh<br><br>Trial Date: None set |

Plaintiffs, individually, and on behalf of all others similarly situated**,** by and through their undersigned counsel, on information and belief, and for their Complaint against Defendant FACEBOOK, INC. state as follows:

1. Through this matter, Plaintiffs challenge Facebook's practice of using children's names and pictures to advertise goods and services without consent. The unpermitted use of a person's identity in the advertising of goods or services represents the "clearest case" of infringement of the right of publicity, 2 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 7:8 (2d ed. 2011). The right to publicity is a state-law created intellectual property right defined as "the inherent right of every human being to control the commercial use of his or her identity"

the infringement of which is a commercial tort of unfair competition.1 *Rights of Publicity and Privacy* § 1:3. This is not merely a right of celebrities, but is a right inherent to everyone entitling them to damages for an unpermitted taking. *Id*. Plaintiffs bring this action to put an end to Facebook's illegal practice of using children in advertisements without consent and to recover their statutory damages.

## PARTIES, JURISDICTION AND VENUE

2. C.M.D. is the minor child of Jennifer E. DeYong both of whom are natural persons and citizens and residents of the Southern District of Illinois. C.M.D. is a facebook user, who during a time that facebook records identified him to be under the age of 18, had his name or profile picture used in connection with a facebook advertisement without consent.

3. T.A.B. is the minor child of Patricia A. Isaak both of whom are natural persons and citizens and residents of the Southern District of Illinois. T.A.B. is a facebook user, who during a time that facebook records identified her to be under the age of 18, had her name or profile picture used in connection with a facebook advertisement without consent.

4. H.E.W. and B.A.W. are the minor children of Jami A. Lemons each of whom are natural persons and citizens and residents of the Southern District of Illinois. H.E.W. and B.A.W. are facebook users, who during a time that facebook records identified them to be under the age of 18, had their name or profile picture used in connection with a facebook advertisement without consent.

5. A.D.Y and R.P.Y. are the minor children of Robert L. Young, Jr. each of whom are natural persons and citizens and residents of the Southern District of Illinois. A.D.Y. and R.P.Y. are facebook users, who during a time that facebook records identified them to be under the age of 18, had their name or profile picture used in connection with a facebook advertisement without consent.

6. All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiffs and the proposed plaintiff class(es), and vice versa.

7. The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

8. Defendant is a citizen of California and Delaware as defined by 28 U.S.C. § 1332(c) as it is a Delaware company with its principal place of business in Menlo Park, California.

9. Defendant operates an interactive website, facebook.com, from datacenters located throughout the Country.

10. Defendant is a resident of the Southern District of Illinois as it is has ongoing and systematic contacts with residents of the Southern District of Illinois. Defendant has, at all material times, conducted business including the operation of interactive websites with and the sale of advertising to residents of the Southern District of Illinois. Moreover, Defendant has specifically targeted the residents of Illinois as users and advertisers such that sufficient minimum contacts exist with the State of Illinois that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

11. When reference in this Complaint is made to any act or omission of Defendant, it should be deemed to mean that the officers, directors, agents, employees, or representatives of Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

**STATEMENT OF FACTS**

12. Facebook is a social networking service and website launched in February 2004 that is operated and privately owned by Facebook, Inc. Registration with facebook requires the providing of a name, gender, date of birth and a valid email.

13. Registered Users are asked to also provide the name of their high school, college, and employer to create a User profile. Users can expand their profile by adding information about their favorite music, books, athlete, and TV shows, interests and hobbies. Users may add other users as "friends" and exchange messages, including automatic notifications when they update their profile.

14.     Although Facebook does not charge fees for membership, it nevertheless receives tremendous value from its members. Facebook's primary source of income is the sale of advertisements which are made more attractive to advertisers by Facebook's ability to collect personal information compiled from its users' and their family's and acquaintances' profiles, demographic information, and activities on facebook and other sites and target ads accordingly. Exclusive control over this information is also valuable to each user. A recent study valued a user's interest in their own demographic information at approximately $3.00 per year; contact information $4.20 per year; a person's hobbies, interest, religious and political views $4.60 per year; web browsing histories $52.00 per year; location history $55.00 per year; and access to chat logs, text messages and emails was valued at $59.00 per year.

15.     Facebook distinguishes itself from other social media sites in several ways. One way is by requiring that users utilize their true identity.

16.     Facebook also distinguishes itself from other sites in that it purposefully seeks out children to be members. As the Ninth Circuit recently observed, Google, Netflix, eBay, Twitter and Amazon, all have prohibited minors from using their websites. *United States v. Nosal*, No. 10-10038, 2012 WL 1176119, *5 (9th Cir. Apr. 10, 2012). Facebook, however, encourages children over the age of 13 to become members of its site.

17.     Sources estimate that as of April 2010, 41.6% of the U.S. population has a facebook account. Although originally only open to students at certain universities, facebook opened itself to high-school-aged users in September 2005 and on September 26, 2006, to everyone 13 and older with a valid email address. Sources estimate more than 14 million U.S. residents under the age of 18 are facebook users.

18.     Facebook generates revenue from transaction fees associated with applications on its site and through the sale of advertising targeted to its users based upon facebook's massive collection of personal information.

19.     When advertisers create an ad campaign with Facebook, they specify the types of users they would like to reach based on age, location, gender, relationship status, educational

1  history, workplace, and interests. Advertisers choose to pay for their ads based on either cost per
2  thousand impressions (the number of users who are presented the ad) or on a cost per click basis.

3       20.     As a result, facebook can boost its revenues by increasing its total membership, the
4  time its users spend on its site, increased participation in its applications, the number of ads to
5  which users are exposed, and the response rate; *i.e.*, the number of times an ad is clicked.

6       21.     In an effort to both increase its membership and an ad's response rate, facebook
7  associates the names and profile pictures of its users, as apparent endorsements, with
8  advertisements for its services and other products and services for which it is paid to promote.

9       22.     Facebook accomplishes this by first matching an individual user, through
10  examination of facebook's collection of personal information about that user, to criteria
11  established by facebook or a paid advertiser.

12       23.     Facebook then combines the selected user's name and profile picture with a
13  facebook-created advertisement featuring facebook-authored text and design elements to create
14  "targeted," "enhanced," "premium," and "social" advertisements that transform its users' names,
15  profile pictures, and actions into an apparent commercial endorsement that is presented to other
16  users for facebook's commercial gain.

17       24.     Facebook maintains sole control over whether a user's personal information is
18  associated with an advertisement or presented to others. A user cannot choose to be associated
19  with an ad nor can a user supply a picture or text to be used in an endorsement ad for which she is
20  selected. Users are not provided with the algorithm underlying the selection of their personal
21  information for use as an endorsement and are denied information about the advertiser. Similarly,
22  although an advertiser may select particular demographics to target, advertisers do not control
23  whose personal information is used in the ad.

24       25.     The presentment of a user's individual and personalized endorsement of products,
25  services and brands to others has concrete, provable value in the economy at large and facebook
26  derives commercial benefit through the use of these apparent endorsements by increasing its user
27  base, the time its users spend on its site, increased participation in its applications, selling
28  additional advertisements and charging increased fees for "social" advertisements.

KOREIN TILLERY
*Attorneys at Law*

26. In April 2010, facebook and the Nielsen Company published the results of a six-month research study of the effect of apparent endorsement advertisements on more than 800,000 facebook users. Jon Gibs and Sean Bruich, *Advertising Effectiveness: Understanding the Value of a Social Media Impression* (April 2010), www.nielsen.com/content/dam/corporate/ us/en/reports-downloads/SocMediaImpressions_US_rpt_4.19.10.pdf.

27. This study found that the addition of apparent endorsements "strongly impact" the three key measures of an advertisement's effect. The study documented a 60% increase in ad recall, a 100% increase in ad awareness and a 300% increase in purchase intent. *Id*. at 7.

28. Accordingly, associating a user's name and profile picture as an apparent endorsement measurably increases the value of advertisements to both the advertiser and facebook. The value of the apparent endorsement is measurable both on an individual and class-wide basis.

29. Plaintiffs are some of the many facebook users whose names and profile pictures facebook used in advertisements as an apparent endorsement of products and services. *See, e.g.*, ECF Nos. 90-1, 90-2, 90-3.

30. Despite the value of their apparent endorsements, facebook failed to obtain legal consent to use Plaintiffs' names or profile pictures in advertisements and Plaintiffs were not paid for the use of their name or likeness in connection with the advertisement.

31. Nonetheless, Defendant used and continues to use Plaintiffs' names and likenesses for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services without legal consent, thus misappropriating Plaintiffs' rights to publicity.

32. This misappropriation deprives Plaintiffs of their financial interest in their inherent right to control the use of their identity causing them actual financial harm.

**CLASS ACTION ALLEGATIONS**

33. This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class:

> All facebook users, who during a time that facebook records identified them to be under the age of 18, had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

34. This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following subclass:

> All facebook users, who during a time that facebook records identified them to be under the age of 18 and a resident of Ohio, Nevada, Illinois, Florida, Massachusetts, Wisconsin or Indiana, and had their name used in connection with a facebook advertisement. (the "Penalty State Sub-Class" or "Penalty State Sub-Class Members").

> Specifically excluded from all proposed classes are: any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

35. The exact number of the members of the class (or sub-classes) is not presently known, but is so numerous that joinder of individual members in this action is impracticable. The exact number of the members of the class (or sub-classes) can only be ascertained through discovery, because such information is in the exclusive control of Defendant. However, based on the nature of the activities alleged herein, Plaintiffs believe that the members of the class (and sub-classes) number at least in the hundreds of thousands and are geographically dispersed throughout the United States. The identities of the members of the class (and sub-classes) are readily obtainable from the Defendant and its agents and are maintained in the computer database of Defendant and are easily retrievable.

36. Plaintiffs will fairly and adequately protect the interests of the class and sub-classes and have retained counsel that are experienced and capable in class action litigation, and in the fields of technology and consumer law. Plaintiffs understand and appreciate their duties to the class and sub-classes under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class and sub-classes.

37. Plaintiffs are asserting claims that are typical of the claims of each member of the class and sub-classes they seek to represent, in that the claims of all members of the class and sub-classes, including Plaintiffs, depend upon a showing of the Defendant's unlawful practices. All claims alleged on behalf of the class and sub-classes flow from this conduct as well. Further, there is no conflict between any Plaintiff and other members of the class or sub-classes with respect to this action.

38. There is a well-defined community of interest in the questions of law and fact involved. Questions of law and fact arising out of Defendant's conduct are common to all members of the class and or sub-classes, and such common issues of law and fact predominate over any questions affecting only individual members of the class and sub-classes.

39. Common issues of law and fact include, but are not limited to, the following:

    a. Whether California law governs the validity of the Facebook's Statement of Rights and Responsibilities;

    b. Whether Defendant's Statement of Rights and Responsibilities is void, voidable or enforceable;

    c. Whether Defendant associated users' names or profile pictures with advertisements for a commercial purpose;

    d. What state law(s) govern the legality of Defendant's association of users' names or profile pictures with advertisements;

    e. Whether Defendant's association of users' names or profile pictures with advertisements infringes on class members' right of publicity;

    f. Whether Defendant acted with consent;

    g. Whether Defendant is entitled to immunity under Communications Decency Act § 230;

    h. Whether Plaintiffs and the members of the class (or sub-classes) are entitled to punitive damages and/or civil penalties; and

    i. The proper measure of punitive damages and/or civil penalties.

40. The relief sought is common to the entirety of the class and sub-classes.

41. Defendant has acted on grounds generally applicable to the class (and sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class as a whole.

42. This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendant.

43. This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

44. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

   a. significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

   b. the size of the individual damages claims of the members of the class (and sub-classes) is too small to make individual litigation an economically viable alternative, such that few members of the class (or sub-classes) have any interest in individually controlling the prosecution of a separate action;

   c. without the representation provided by Plaintiffs herein, few, if any, members of the class (or sub-classes) will receive legal representation or redress for their injuries;

   d. class treatment is required for optimal deterrence;

   e. despite the small size of the claims of many individual members of the class (and sub-classes), their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to

be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

    f.   no unusual difficulties are likely to be encountered in the management of this class action;

    g.   plaintiffs and the members of the class (and sub-classes) have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct;

    h.   absent a class action, Defendant will likely retain millions of dollars received as a result of its wrongdoing, and its illegal conduct will go unremedied and uncorrected; and

    i.   absent a class action, the members of the class (and sub-classes) will not receive restitution, will continue to suffer losses, and Defendant will be allowed to retain the proceeds of its ill-gotten gains.

45.   Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class (or sub-classes), and result in judicial consistency.

## COUNT I
## (DECLARATORY RELIEF UNDER 28 U.S.C. § 2201)

46.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 45 as if fully set out herein.

47.   At all times relevant hereto, Plaintiffs and Class Members were minor children and facebook users.

48.   Defendant contends that its Statement of Rights and Responsibilities constitutes a valid and enforceable contract that, among other things, provides that its users agree to the commercialization of their identity by providing:

> your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.

Facebook's Statement of Rights and Responsibilities at ¶ 10.

49. However, at all times relevant hereto, Plaintiffs and Class Members were minor children and as such lacked the capacity to consent to a contract that purports to "give a delegation of power" or that relates to "any personal property not in the immediate possession or control of a minor." Cal. Fam. Code § 6701 (West 2004).

50. Facebook's SSR violates Code § 6701 as it purports to both give a delegation of power and relates to personal property not in the immediate possession or control of a minor.

51. Contracts that are contrary to Section 6701 are "absolutely void, with no necessity to disaffirm [it] to avoid [its] apparent effect." *Hakes Inv. Co. v. Lyons*, 137 P. 911, 912 (Cal. 1913); *Duffens v. Valenti*, 161 Cal. App. 4th 434, 451 (2008) ("Contracts that are contrary to express statutes or to the policy of express statutes ... are illegal contracts. Any such illegality voids the entire contract.").

52. Plaintiffs contend that by reason of the facts alleged above, facebook's Statement of Rights and Responsibilities is void and of no legal force and effect as between Plaintiffs, Class Members and facebook. Alternatively, the SRR is governed by Family Code § 6702 and is voidable at the discretion of Plaintiffs and Class Members.

53. Nevertheless, facebook has raised numerous provisions of its SRR in its defense to this and other matters.

54. The existence of facebook's claims in the face of Family Code § 6701 injects unnecessary uncertainty into the rights and responsibilities of the parties. Given the number of children who are facebook members and the increasing number of disputes challenging facebook's conduct, facebook is likely to assert its SRR as a defense to claims involving minor users for the foreseeable future.

55. Plaintiffs request that this court enter a declaratory judgment as to the rights and duties of Plaintiffs and Class Members and Defendant with respect to the Statement of Rights and Responsibilities and that such judgment find the SRR to be absolutely void.

KOREIN TILLERY
*Attorneys at Law*

## COUNT II
**(Infringement of the Right of Identity)**

56. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 45 as if fully set out herein.

57. At all times relevant hereto, Plaintiffs and Penalty State Sub-Class Members were minor children and facebook users.

58. The addition of Plaintiffs' and Penalty State Sub-Class Members' names and likenesses as apparent endorsements result in a 60% increase in ad recall, a 100% increase in ad awareness and a 300% increase in purchase intent.

59. Accordingly, the commercial use of Plaintiffs and Penalty State Sub-Class Members' names and likenesses has a tangible value measurable both on an individual and class-wide basis.

60. Plaintiffs and Penalty State Sub-Class Members are facebook users whose names and profile pictures in which they are identifiable facebook used in advertisements as an apparent endorsement of products and services.

61. Facebook never obtained legal consent to use Plaintiffs' names and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services and thereby deprived Plaintiffs of the exclusive control of their identity.

62. The unpermitted use of a person's identity in the advertising of goods or services represents the "clearest case" of infringement of the right of publicity, 2 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 7:8 (2d ed. 2011).

63. Nevertheless, Defendant used and continues to use Plaintiffs' and Penalty State Sub-Class Members' names and photographs in which Plaintiffs are identifiable for the commercial purpose of marketing, advertising, selling and soliciting the purchase of goods and services without obtaining legal consent. *See, e.g.*, ECF Nos. 90-1, 90-2, 90-3.

64. Defendant gained pecuniary benefit from the unauthorized use of Plaintiffs' names and photographs. These acts resulted in Defendant receiving millions of dollars in revenue as a result of its illegal activities.

65. Despite the value of their apparent endorsements, facebook failed to obtain legal consent to use and Plaintiffs were not compensated for the use of their names and photographs for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services and thereby deprived of the monetary value of the use of their name and photographs associated with the advertisement.

66. Nonetheless, Defendant used and continues to use Plaintiffs' names and likenesses for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services without legal consent, thus misappropriating Plaintiffs' rights to publicity.

67. This misappropriation deprives Plaintiffs of their financial interest in their inherent right to control the use of their identity causing them actual financial harm.

68. As a direct and proximate result of the Defendant's use of Plaintiffs' and Penalty State Sub-Class Members names and photographs without legal consent or payment, Plaintiffs suffered actual damages including the financial loss of the value of the use of their identity for the apparent endorsement and the statutory right to exert exclusive control over their identity.

69. Facebook's acts give rise to statutorily authorized damages in the absence of actual damages.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

    a. Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure,

    b. Entering a declaratory judgment as to the rights and duties of Plaintiffs, Class Members and Defendant with respect to the Statement of Rights and Responsibilities and that such judgment find the SRR to be absolutely void;

    c. Finding Defendant used Plaintiffs and Penalty State Sub-Class Members' names and pictures without consent,

    d. Enjoining Defendant from continuing its illegal conduct, and

    e. Awarding Plaintiffs and Penalty State Sub-Class Members statutory damages, pre- and post-judgment interest, costs of suit, and attorneys' fees.

Dated: April 20, 2012

By  /s Aaron M. Zigler
One the attorneys for Plaintiffs

Steven A. Katz
Aaron M. Zigler
KOREIN TILLERY
505 N. 7th Street, Suite 3600
St. Louis, MO 63101-1625
Tel. (314) 241-4844  Fax. (314) 241-3525

Edward A. Wallace
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel. (312) 346-2222  Fax. (312) 346-0022

Lee Squitieri
Garry T. Stevens Jr.
SQUITIERI & FEARON, LLP
32 E. 57th Street, 12th Floor
New York, NY 10022
Tel. (212) 421-6492  Fax. (212) 421-6553

Antony Stuart
STUART LAW FIRM
801 South Grand Avenue, 11th Floor
Los Angeles, California 90017-4613
Tel. (213) 612-0009  Fax. (213) 489-0225

John C. Torjesen
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Blvd.
Los Angeles, California 90049
Tel. (310) 440-0005  Fax. (310) 440-0006