COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| C.M.D., by his next friend Jennifer E. DeYong, T.A.B. by her next friend Patricia A. Isaak, H.E.W. & B.A.W., by their next friend Jami A. Lemons, and A.D.Y. & R.P.Y., by their next friend Robert L. Young, Jr., and R.R.C., by her next friend Robyn S. Courtway, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FACEBOOK, INC.,<br><br>                    Defendant. | Case No. 12-CV-01216-RS<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**F.R.C.P. 12(b)(1), 12(b)(6)**<br><br>Date:          January 9, 2014<br>Time:         1:30 p.m.<br>Courtroom:  3<br>Dist. Judge: Hon. Richard Seeborg<br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF RELIEF SOUGHT ..................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

I. INTRODUCTION ...................................................................................................... 2

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................... 3

III. APPLICABLE STANDARDS .................................................................................... 5

IV. ARGUMENT ........................................................................................................... 5

    A. The Court Should Dismiss the SAC for Lack of Article III Standing .................. 5

    B. The Court Should Dismiss Count I (Declaratory Relief) for Failure to State a Claim upon Which Relief Can Be Granted ....................................................... 9

        1. Count I Is Precluded Under the Law-of-the-Case Doctrine ...................... 10

        2. Count I Should Be Dismissed Because the SRR Is Neither Void Nor Voidable by Plaintiffs ......................................................................... 12

            a. The SRR Is Not Void Under California Family Code § 6701 ...... 12

            b. The SRR Is Not Voidable Under California Family Code § 6710 .............................................................................. 14

    C. Plaintiffs are not entitled to the declaratory relief sought in Count II ................. 16

        1. No "Actual Controversy" Exists as to COPPA's Preemption of § 6701 ................................................................................................... 16

        2. No "Actual Controversy" Exists as to COPPA's Preemption of Unidentified "State Laws." ..................................................................... 17

    D. Plaintiffs' Claims under Counts III and IV for Violation of the Illinois Right of Publicity Act Should be Dismissed. ...................................................... 18

        1. The SRR's Choice-of-law Provision Bars Claims under Illinois Law ....................................................................................................... 18

        2. Plaintiffs Also Fail to State a Claim for Relief Under Illinois Law .......... 20

    E. Plaintiffs' Claims Should Be Dismissed with Prejudice ..................................... 25

V. CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.V. v. iParadigms, LLC,*
    544 F. Supp. 2d 473 (E.D. Va. 2008), *aff'd in part, rev'd in part on other grounds,*
    562 F.3d 630 (4th Cir. 2009)..................................................................................................... 15

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990)..................................................................................................... 25

*Alvarez v. Smith,*
    558 U.S. 87 (2009) ..................................................................................................................... 16

*Armendariz v. Found. Health Psychcare Servs. Inc.,*
    24 Cal. 4th 83 (2000) ................................................................................................................. 20

*Ascon Props., Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir.1989)..................................................................................................... 25

*Asdar Grp. v. Pillsbury, Madison & Sutro,*
    99 F.3d 289 (9th Cir. 1996).......................................................................................................... 3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................................... 5

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009)............................................................................................... 22, 24

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) ................................................................................................................. 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................................. 5, 6

*Big Creek Lumber Co. v. Cnty. of Santa Cruz,*
    38 Cal. 4th 1139 (2006) ............................................................................................................. 14

*Bland v. Roberts,*
    No. 12-1671, 2013 U.S. App. LEXIS 19268 (4th Cir. 2013) .................................................... 24

*Blankenship v. Hearst Corp.,*
    519 F.2d 418 (9th Cir. 1975)..................................................................................................... 13

*Burton v. Time Warner Cable Inc.,*
    No. CV 12-06764 JGB, 2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) ...................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

# TABLE OF AUTHORITIES
### (continued)

Page

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ........................................................................................... 16

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .................................................................. 22, 23, 24

*Carolina Tel. & Tel. Co. v. Johnson*,
  168 F.2d 489 (4th Cir. 1948) .............................................................................. 16

*Casey v. Kastel*,
  237 N.Y. 305 (1924) ........................................................................................... 16

*Chaffin v. Wallace Fin. Co.*,
  136 Cal. App. 2d Supp. 928 (1955) .................................................................... 13

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) .................................................................................... 10, 12

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991)........................................................................... 10

*Coffman v. Breeze Crop.*,
  323 U.S. 316 (1945) ........................................................................................... 17

*Cunningham Charter Corp. v. Learjet, Inc.*,
  870 F. Supp. 2d 571 (S.D. Ill. 2012) ............................................................. 18, 19

*David Cohen v. Facebook, Inc.*,
  No. BC444482 (L.A. Super. Ct.) ........................................................................ 25

*Dock v. Nevada*,
  No. 2:10-cv-00275-RCJ-LRL, 2010 WL 5441642 (D. Nev. Dec. 28, 2010) ........................ 16

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001)..................................................................... 7

*Edwards v First Am. Corp.*,
  610 F.3d 514 (9th Cir. 2010)................................................................... 2, 4, 9, 20

*Evans v. Hewlett-Packard Co.*,
  No. 13-cv-02477-WHA, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013).......................... 24, 25

*In re Extradition of Coe*,
  261 F. Supp. 2d 1203 (C.D. Cal. 2003) .............................................................. 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc)........................................................... 22, 23

*Fergus v. Songer*,
    150 Cal. App. 4th 552 (2007) ........................................................................ 20

*Ferreira v. Borja*,
    93 F.3d 671 (9th Cir. 1996)........................................................................... 10

*Finkel v. Facebook, Inc.*,
    No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009)....................... 22

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ......................................................................... 7

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .............................................................. 7

*Fraley v. Facebook, Inc.*,
    No. C11-1726 RS .................................................................................. 7, 14

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816, 830 (2002) .................................................................... 22

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ...................................................... 24

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................. 22, 23, 24

*Golden W. Ref. Co. v. Suntrust Bank*,
    538 F.3d 1233 (9th Cir. 2008)......................................................................... 14

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    MDL Civ. No. 12-2358-SLR, 2013 WL 5582866 (D. Del. Oct. 9, 2013).................. 8

*In re Google, Inc. Privacy Policy Litig.*,
    No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012)...................... 7

*Hakes Inv. Co. v. Lyons*,
    137 P. 911 (Cal. 1913) ........................................................................... 11, 13

*Harden v. Am. Airlines*,
    178 F.R.D. 583 (M.D. Ala. 1998) .................................................................... 15

Cooley LLP
Attorneys At Law
San Francisco

iv.

Facebook's Motion to Dismiss the SAC
Case No. 12-CV-01216-RS

**TABLE OF AUTHORITIES**
(continued)

Page

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir. 1982).................................................................................. 10

*Hill v. Stubhub, Inc.*,
727 S.E.2d 550 (N.C. Ct. App. 2012) .................................................................. 23

*Holland v. Universal Underwriters Ins. Co.*,
270 Cal. App. 2d 417 (1969)................................................................................. 15

*ICU Med., Inc. v. B. Braun Med. Inc.*,
No. C 01-3202 CRB, 2005 WL 588341 (N.D. Cal. Mar. 14, 2005)..................... 17

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)............... 6

*Janice Doty Unlimited, Inc. v. Stoecker*,
697 F. Supp. 1016 (N.D. Ill. 1988) ...................................................................... 19

*Jurin v. Google Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010)................................................................. 23

*Korean Am. Broad. Co. v. Korean Broad. Sys.*,
No. 09-C-6665, 2012 WL 1080260 (N.D. Ill. Mar. 29, 2012)............................... 19

*L.P. Steuart & Bro., Inc. v. Capital View Realty Co.*,
112 F.2d 583 (D.C. Cir. 1940) .............................................................................. 16

*LaCourt v. Specific Media, Inc.*,
No. SACV 10-1256-GW, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)................. 7

*Leslie Salt Co. v. United States*,
55 F.3d 1388 (9th Cir. 1995)................................................................................. 12

*Levitt v. Yelp! Inc.*,
No. 10-cv-1321 EMC, 2011 WL 50795526 (N.D. Cal. Oct. 26 2011)................... 24

*Low v. LinkedIn Corp.*,
No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)............... 6, 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................ 5

*MacGreal v. Taylor*,
167 U.S. 688 (1897) .............................................................................................. 16

# TABLE OF AUTHORITIES
### (continued)

Page

*McAllister v. Smith*,
  17 Ill. 328 (1856) ................................................................................................................ 18

*McCoy v. Gamesa Tech. Corp., Inc.*,
  No. 11-C-592, 2012 WL 245162 (N.D. Ill. Jan. 26, 2012) .................................................... 19

*Medimmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ............................................................................................................ 16

*Meth v. Facebook, Inc.*,
  No. BC 454799 (L.A. Super. Ct.) ......................................................................................... 25

*Midway Home Entm't Inc. v. Atwood Richards Inc.*,
  No. 98-C-2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998) ................................................. 19

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
  902 F.2d 703 (9th Cir. 1990)............................................................................................... 10

*Morgan v. Morgan*,
  220 Cal. App. 2d 665 (1963)................................................................................... 13, 14, 16

*Muldoon v. Tropitone Furniture Co.*,
  1 F.3d 964 (9th Cir. 1993)................................................................................................... 18

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001).................................................................................................. 5

*Newell Co. v. Petersen*,
  325 Ill. App. 3d 661 (2001).................................................................................................. 18

*NPR, Inc. v. Am. Int'l Ins. Co.*,
  242 F. Supp. 2d 121 (D.P.R. 2003) ................................................................................ 10, 12

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)............................................................................................................... 6

*Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach.*,
  No. 09-0044 SC, 2009 WL 2252121 (N.D. Cal. July 28, 2009)............................................. 3

*Pac. Coast Marine Windshields v. Malibu Boats*,
  No. 1:11-cv-01594-LJO-BAM, 2011 WL 6046308 (E.D. Cal. Dec. 5, 2011) ...................... 10

*Paster v. Putney Student Travel, Inc.*,
  CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ....................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

# TABLE OF AUTHORITIES
### (continued)

Page

*Perfect 10, Inc. v. CCBill LLC,*
   488 F.3d 1102 (9th Cir. 2007).................................................................................. 22

*Potomac Leasing Co. v. Chuck's Pub, Inc.,*
   156 Ill. App. 3d 755 (1987)...................................................................................... 19

*Pub. Serv. Comm'n v. Wycoff Co.,*
   344 U.S. 237 (1952).................................................................................................. 17

*Raines v. Byrd,*
   521 U.S. 811 (1997).................................................................................................... 9

*Robins v. Spokeo, Inc.,*
   No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) ...................... 9

*Robyn Cohen v. Facebook, Inc.,*
   No. 10-cv-5282 RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ..................... 8, 9

*Schram v. Poole,*
   111 F.2d 725 (9th Cir. 1940)..................................................................................... 13

*Schumm v. Berg,*
   37 Cal. 2d 174 (1951) ............................................................................................... 13

*Sheller by Sheller v. Frank's Nursery & Crafts, Inc.,*
   957 F. Supp. 150 (N.D. Ill. 1997) ............................................................................. 15

*Sisco v. Cosgrove, Michelizzi, Schwabacher, Ward & Bianchi,*
   51 Cal. App. 4th 1302 (1996) ................................................................................... 13

*Sorensen v. Pyrate Corp.,*
   65 F.2d 982 (9th Cir. 1933)....................................................................................... 12

*Soriano v. Countrywide Home Loans, Inc.,*
   No. 09-CV-02415-LHK, 2011 WL 2175603 (N.D. Cal. June 2, 2011) ................... 14

*Spencer v. Collins,*
   156 Cal. 298 (1909) .................................................................................................. 15

*Spinney v. Griffith,*
   98 Cal. 149 (1893) .................................................................................................... 20

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998).................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................................................................ 5

*Steffel v. Thompson*,
415 U.S. 452 (1974) ............................................................................................ 16

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................. 14

*Strigliabotti v. Franklin Res., Inc.*,
398 F. Supp. 2d 1094 (N.D. Cal. 2005) .............................................................. 12

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .............................................................................................. 9

*Taylor v. Indus. Accident Comm'n*,
216 Cal. App. 2d 466 (1963) .............................................................................. 13

*Telular v. Mentor Graphics Corp.*,
No. 01 C 431, 2002 U.S. Dist. LEXIS 26744 (N.D. Ill. Feb. 12, 2002) ............... 20

*Thomas v. Bible*,
983 F.2d 152 (9th Cir. 1993) ......................................................................... 10, 11

*Thomas v. Guardsmark, Inc.*
381 F.3d 701 (7th Cir. 2004) .............................................................................. 18

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
594 F.2d 730 (9th Cir. 1979) ................................................................................ 5

*Toon v. Mack Int'l Motor Truck Corp.*,
87 Cal. App. 151 (1927) ..................................................................................... 16

*Trannel v. Prairie Ridge Media, Inc.*,
987 N.E.2d 923 (Ill. App. Ct. 2013) ................................................................... 20

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) .............................................................................. 10

*United States v. Jordan*,
429 F.3d 1032 (11th Cir. 2005) .......................................................................... 11

*Vencor, Inc. v. Webb*,
33 F.3d 840 (7th Cir. 1994) .......................................................................... 18, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

**TABLE OF AUTHORITIES**
(continued)

Page

*Warner Bros. Pictures, Inc. v. Brodel*,
    31 Cal. 2d 766 (1948) ......................................................................................................... 14

*Whitmore v. Ark.*,
    495 U.S. 149 (1990) ............................................................................................................. 6

*WTM, Inc. v. Henneck*,
    125 F. Supp. 2d 864 (N.D. Ill. 2000) ................................................................................ 19

*Yunker v. Pandora Media, Inc.*,
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................ 8

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ............................................................................................. 23

**STATUTES**

28 U.S.C.
    § 1404(a) ............................................................................................................................ 10
    § 2201 ................................................................................................................................. 16

47 U.S.C.
    § 230(c)(1) .......................................................................................................................... 22
    § 230(f)(2) .......................................................................................................................... 22

Cal. Fam. Code
    § 6700 ........................................................................................................................... 12, 20
    § 6701 ........................................................................................................................... passim
    § 6710 ......................................................................................................................... 9, 12, 14
    § 6750 ................................................................................................................................. 14
    § 6750(a)(2) ........................................................................................................................ 14
    § 6751 ................................................................................................................................. 14

Cal. Civil Code
    § 33 .................................................................................................................................... 13
    § 36 .................................................................................................................................... 14
    § 1599 ................................................................................................................................. 20
    § 3344 ...................................................................................................................... 7, 17, 19

Children's Online Privacy Protection Act ............................................................................. passim

Communications Decency Act
    § 230 ................................................................................................................... 3, 22, 23, 24

Illinois Franchise Act, 815 ILCS 705/4 .................................................................................. 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ix.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

**TABLE OF AUTHORITIES**
(continued)

**Page**

Illinois Right of Publicity Act, 765 ILCS 1075 ........................................................... 8, 17, 19, 20

**OTHER AUTHORITIES**

5 Williston on Contracts § 9:14 (4th Ed.) ..................................................................... 15

Federal Rules of Civil Procedure
   12(b)(1) .................................................................................................... 1, 5, 17
   12(b)(6) .......................................................................................................... 1, 5

Restatement (Second) of Conflict of Laws § 187 (1971) ....................................... 18, 19

United States Constitution, art. III ......................................................................... passim

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2014 at 1:30 p.m. or as soon thereafter as this Motion may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 3, 17th Floor, Defendant Facebook, Inc. ("Facebook") will move to dismiss Plaintiffs' Second Amended Complaint (the "SAC"). Facebook's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the concurrently filed Declarations of Matthew D. Brown ("Brown Decl.") and Sandeep N. Solanki ("Solanki Decl."), the previously-filed Declaration of Ana Yang Muller (Dkt. 110) ("Muller Decl."), and the exhibits thereto, the concurrently filed Request for Consideration of Documents Incorporated into the Second Amended Complaint and for Judicial Notice, all pleadings and papers on file, and upon such other matters as may be presented to or properly before the Court.

**STATEMENT OF RELIEF SOUGHT**

Dismissal of the SAC, with prejudice, for lack of standing and failure to state a claim.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the SAC should be dismissed because Plaintiffs fail to allege an injury in fact that gives them standing under Article III of the United States Constitution.

2.      Whether the SAC should be dismissed because Plaintiffs' claim for declaratory relief is precluded by the law-of-the-case doctrine.

3.      Whether the SAC should be dismissed because Plaintiffs fail to state a claim for relief under California Family Code §§ 6701 or 6710.

4.      Whether the SAC should be dismissed because Plaintiffs seek an advisory opinion and have failed to allege any actual case or controversy capable of adjudication.

5.      Whether the SAC should be dismissed because the SRR precludes Plaintiffs from bringing claims under Illinois law.

6.      Whether the SAC should be dismissed because Plaintiffs have failed to state a claim under the Illinois Right of Publicity Act.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3     The Second Amended Complaint is the third time that Plaintiffs have refashioned their

4 pleading in an attempt to conjure up a cognizable legal claim from the allegation that content they

5 voluntarily shared with their Facebook friends was republished to those same friends, sometimes

6 alongside a related advertisement.  As with Plaintiffs' first two attempts, the SAC is meritless.

7     *First*, and fatal to all claims, Plaintiffs allege no personalized injury caused by Facebook

8 that gives them standing under Article III of the U.S. Constitution.  Rather than alleging facts

9 showing how Plaintiffs themselves were injured, they make generic and entirely conclusory

10 claims that Facebook deprived them of a "financial interest in their inherent right to control the

11 use of their identity causing them actual financial harm."  Plaintiffs allege no facts suggesting that

12 they have ever (or could have ever) received compensation for the alleged endorsements at issue

13 here, nor that their prospects for doing so in the future have been diminished.  Plaintiffs' claims

14 fail because the law requires more than a simple declaration that one has been financially harmed.

15     *Second*, Plaintiffs seek to invalidate Facebook's terms of service (known as the

16 "Statement of Rights and Responsibilities" or "SRR") by asking this Court to resuscitate claims

17 that Facebook's terms violate California Family Code § 6701.  Judge G. Patrick Murphy,

18 however, rejected these same arguments against Plaintiffs nearly twenty months ago, when he

19 refused to invalidate the SRR on that basis, and enforced it, over Plaintiffs' objection, by

20 transferring this action to this Court.  Judge Murphy also (correctly) rejected Plaintiffs' assertion

21 that that the SRR was "voidable," citing Plaintiffs' continued use of and benefit from Facebook.

22 His rulings are law of the case, and Plaintiffs cannot relitigate them here.

23     *Third*, Count II asks this Court to make improper, advisory rulings on hypothetical legal

24 issues that are not presented in this case.  Namely, Plaintiffs seek a declaration that the Children's

25 Online Privacy Protection Act ("COPPA") does not preempt § 6701 (which Facebook has never

26 asserted) and does not preempt unspecified states' right-of-publicity laws (under which Plaintiffs

27 have no claim).  The COPPA issue is not even ripe as to the *only* right-of-publicity statute at issue

28 here, the Illinois statute, because that law has no parental consent requirement.  Consequently, the

1   Court lacks subject matter jurisdiction to even consider Count II.

2          *Finally,* Counts III and IV allege Illinois statutory claims that are precluded by the SRR's

3   choice-of-law provision.  Because Plaintiffs agreed, as a condition to using Facebook, to bring

4   any claims they have under California law (and Judge Murphy has already enforced the SRR

5   against them), Counts III and IV must also fail.  Even absent this dispositive defect, Plaintiffs

6   expressly consented to the conduct they now challenge.  Further, Plaintiffs' claims are precluded

7   by § 230 of the Communications Decency Act and fail under the Illinois law for other reasons.

8          Plaintiffs have been unable to allege any cognizable claims, after having had many

9   chances to do so.  Their claims should now be dismissed with prejudice.

10   **II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY**

11          Facebook is a free social networking service that allows people ages thirteen and older to

12   share information about themselves and to connect with their Facebook friends ("Friends") and

13   the groups, businesses, organizations, and causes they care about.  (SAC ¶¶ 13, 14, 15, 18.)  To

14   join, Facebook users ("Users") must provide their name, age, gender, and email address (*id.* ¶ 13)

15   and accept the terms of the SRR.  A User can also upload a "profile picture," but that is not

16   required, and the picture can be of anything, including pets, a landscape, or even other people.

17          According to the SAC, Users can create and update their personal Facebook "profile" by

18   adding information about themselves and their interests and hobbies.  (*Id.* ¶¶ 13-15.)  Users can

19   also express their affinity for content by clicking on a button labeled "Like" that is associated

20   with Facebook "Pages" created by a variety of businesses, organizations, groups, causes, and

21   individuals.  (Orig. Compl., Dkt. 2, ¶ 18.)[1]  As with other User content on the site, a story about a

22   User's action—for example, a statement that the User "Likes" the Barack Obama Page—is shared

23   with the audience selected by the User, usually his or her Friends, consistent with the User's

24   privacy settings.  (*See id.*)  Later, and again subject to the User's privacy settings, the User's

25   Friends may again see a republication of the same story (that he or she "Likes" a Facebook Page),

26   

27   [1]  The Court may judicially notice its own records and prior pleadings.  *See Asdar Grp. v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996); *Op'g Eng'rs' Pens. Trust Fd. v. Clark's Weld'g & Mach.*, No. 09-0044SC, 2009 WL 2252121, at *1 (N.D. Cal. July 28, 2009).

28

1   sometimes alongside a related ad for that Page.  (*See* Orig. Compl., Dkt. 2, ¶ 19; SAC ¶ 25.)

2         All of the current Plaintiffs reside in Illinois and, through today, remain active Users of

3   Facebook.[2]  (SAC ¶¶ 2-6; Trnsfer Order, Dkt. 93, at 3, 8.)  Plaintiffs assert four claims.  *First*,

4   Plaintiffs assert a claim for declaratory relief under California law, asking the Court to find that

5   the SRR violates § 6701 and is "absolutely void" as to all U.S. 13- to 17-year-old Facebook

6   Users.  (SAC ¶¶ 58-74.)  Plaintiffs previously argued for the same ruling, *on the very same bases*,

7   in opposition to Facebook's motion to transfer this action from the U.S. District Court for the

8   Southern District of Illinois (Judge G. Patrick Murphy).  (Opp. to Mtn. to Trnsfr., Dkt. 78, at 3-4.)

9   Judge Murphy ruled that Plaintiffs were bound by the SRR and enforced its forum-selection

10  clause, over Plaintiffs' objections.  (Trnsfer Order, Dkt. 93, at 6-8 ("minor cannot take the benefit

11  of the contract without the burden of the conditions or stipulations").)  *Second*, Plaintiffs assert a

12  claim for declaratory relief in which they appear to ask the Court to "find that [California] Family

13  Code § 6701" and all state laws concerning the right of publicity "are not preempted by COPPA."

14  (SAC ¶¶ 75-85.)  *Third*, Plaintiffs assert a claim under the Illinois Right of Publicity Act, in

15  which they allege that "social ads" displayed on Facebook violate the Act.  (SAC ¶¶ 86-101.)

16  *Fourth*, and similarly, Plaintiffs assert a claim under the Illinois Right of Publicity Act based on

17  "Sponsored Stories" displayed on Facebook.  (SAC ¶¶ 102-117.)

18        Previously, Plaintiffs acknowledged that they "consent[ed] to [Facebook's] use of their

19  names and likenesses in advertising" (Orig. Compl., Dkt. 2, ¶ 21), but complained that Facebook

20  did not obtain "consent of [their] parents or guardians" (*id*. ¶ 39).  In the SAC, Plaintiffs now

21  assert that, as minors, they "lack the capacity to consent."  (SAC ¶¶ 93, 109.)  Plaintiffs contend

22  that without "legal consent," they suffered an "invasion of the statutory right to exert exclusive

23  control over their identity."  (*Id.* ¶¶ 98-100, 114-116.)

24        The class is defined as all U.S. Facebook Users who were "under the age of 18 [and] had

25  _____

26  [2]  The original Complaint was filed on behalf of two named Plaintiffs, E.K.D. and C.M.D.  On
    April 20, 2012, five individuals were added as new named Plaintiffs in the First Amended
27  Complaint ("FAC"), and E.K.D. was removed.  (Orig. Compl., Dkt. 2; FAC ¶¶ 2-5.)  R.R.C. was
    added as a new named Plaintiff in the SAC, filed on October 15, 2013.  Facebook filed motions to
28  dismiss the original Complaint and the FAC, but neither motion was ruled upon.

1    their name or profile picture used in connection with a Facebook advertisement."  (SAC ¶ 45.)

2    Additionally, the SAC identifies a sub-class of Users who were residents of Illinois.  (*Id.* ¶ 46.)

3    Counts III and IV appear to be brought only on behalf of the sub-class.[3]

4    **III.   APPLICABLE STANDARDS**

5        A court may dismiss a claim under Rule 12(b)(1) based on a lack of subject matter

6    jurisdiction, and the motion may attack either the complaint on its face or the existence of

7    jurisdiction in fact.  *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 732-33

8    (9th Cir. 1979).  If a complaint does not establish standing under Article III of the U.S.

9    Constitution, a federal court does not have subject matter jurisdiction to hear the case.  *See Steel*

10   *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

11       Under Rule 12(b)(6), a court may dismiss a claim with "no cognizable legal theory" or

12   lacking "sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250

13   F.3d 729, 732 (9th Cir. 2001).  Although "all material allegations … are accepted as true," *id.*,

14   "labels and conclusions, and a formulaic recitation of the elements" cannot defeat dismissal, *Bell*

15   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual

16   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

17   556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To do so, it must "allow[] the

18   court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

19   **IV.   ARGUMENT**

20       **A.   The Court Should Dismiss the SAC for Lack of Article III Standing.**

21       Plaintiffs must have Article III standing to pursue their claims.  *See Lujan v. Defenders of*

22   *Wildlife*, 504 U.S. 555, 560-61 (1992) (plaintiffs must allege that (1) they suffered an injury in

23

---

24   [3] On June 22, 2012, Plaintiffs moved to intervene in *Fraley v. Facebook, Inc.*, contending final
     approval of the settlement in that case "could work to bar their claims for substantial declaratory

25   and monetary relief."  (Mtn. in Intervention to Opp. the Mtn. for Preliminary Approval of Class
     Settlement at 1, *Fraley v. Facebook, Inc.*, No. C11-1726 RS (N.D. Cal. June 22, 2012), ECF 187.)

26   Plaintiffs' counsel also represented to the Court that the *Fraley* settlement, if approved, would
     "wipe out" all of Plaintiffs' claims in this case.  (Rep. Tr. of Proceedings at 64, *Fraley*, (N.D. Cal.

27   Aug. 2, 2012).)  Plaintiffs' counsel appealed the *Fraley* settlement, purportedly on behalf of other
     clients.  (Notice of Appeal by Shane Objectors, *Fraley* (N.D. Cal. Sept. 24, 2013), ECF 376.)

28

fact; (2) there is a causal connection between the injury and the alleged conduct; and (3) the injury may be redressed by a favorable decision); *see also Whitmore v. Ark.*, 495 U.S. 149, 155 (1990) (injury must be "distinct and palpable," not "abstract").  Moreover, each named plaintiff must establish his or her *personal* standing.  *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974).

Plaintiffs offer multiple theories as to why they may have Article III standing, but they all fail.  First, Plaintiffs claim that Facebook's alleged "misappropriation deprives Plaintiffs of their financial interest in their inherent right to control the use of their identity causing them actual financial harm."  (SAC ¶¶ 44, 99, 115.)  This is exactly the type of conclusory allegation of harm that the Court should reject.  *See Twombly*, 550 U.S. at 555 (the court need not accept the truth of legal conclusions couched as factual allegations).  Without concrete and particularized factual allegations, which are entirely absent from the SAC, Plaintiffs cannot establish standing.  *See Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2011 WL 5509848, at *3-4 (N.D. Cal. Nov. 11, 2011) (plaintiff was unable to articulate what information was actually disclosed or how it was connected to his identity); *see also In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *4 (N.D. Cal. Sept. 20, 2011) (plaintiffs failed to identify what devices they used, what applications they downloaded, or which defendant accessed their information).

Second, Plaintiffs attempt to support their allegations of "actual financial harm" by citing studies or other sources about the alleged value of Social Ads on Facebook.  (SAC ¶¶ 37-38.)  For example, Plaintiffs cite a Nielsen study that generally discusses the ways in which ads with social context (i.e., an indication that one's friends are also connected to, or have an affinity for, the underlying subject matter) may be effective for *advertisers*.  (*Id*. (citing alleged improvements in "ad recall," "ad awareness," and "purchase intent").)  But that study *does not* purport to establish that such endorsements have monetary value to individual Users or even that Facebook derives additional revenue from them.  (Brown Decl. Ex. A.)  Plaintiffs also rely on an unnamed "study" on the hypothetical or average value of certain types of demographic information (SAC ¶ 15) for unknown individuals during an uncertain period of time.  Nowhere in the SAC, however, do Plaintiffs allege that their social actions—much less their names and profile pictures—actually have any such value.  And, in any event, courts have repeatedly found that this type of generic

1   allegation of value does *not* confer standing, because the use of demographic information has

2   "never been considered a[n] economic loss to the subject." *In re Doubleclick Inc. Privacy Litig.*,

3   154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001); *see also Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.

4   App. 4th 986, 994 (2011) ("that the address had value to Lamps Plus, such that the retailer paid []

5   a license fee for its use, does not mean that its value to plaintiff was diminished in any way").[4]

6       The *Fraley* holding regarding standing is also inapposite. In that case, the court held that

7   the plaintiffs sufficiently alleged Article III standing because of their particularized allegations of

8   injury under California Civil Code § 3344 ("§ 3344"). *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d

9   785, 796 (N.D. Cal. 2011). The plaintiffs in *Fraley*, for instance, alleged specific actions, which

10  they personally took on Facebook, that resulted in challenged the Sponsored Stories. *Id.* at 791-

11  92. Plaintiffs here do not allege any violation of § 3344, and the SAC does not contain the types

12  of specific and individualized allegations on which the court relied in its finding of Article III in

13  *Fraley*. Id. at 797 ("The SAC further alleges that each named Plaintiff was featured in a

14  Sponsored Story advertising that the Plaintiff 'likes' a certain product, company, or brand…. The

15  alleged commercial misappropriation is thus concrete and particularized with respect to each

16  individual named Plaintiff."). (citation omitted)).[5]

17      Plaintiffs also claim that they were injured because Facebook allegedly earns money from

18  the display of Users' names or likenesses alongside ads. As this Court previously noted, an

19  alleged benefit to Facebook is a legally distinct concept from a concrete injury allegedly suffered

20  by Plaintiffs. (*See* Order Granting Motion for Final Approval of Settlement Agreement at 4,

21  *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Aug. 26, 2013), ECF No. 359 ("*Fraley*

22

23  [4] *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB (AJWx), 2013 WL 3337784, at *9

24  (C.D. Cal. Mar. 20, 2013) ("generalized allegations that personal information has independent
    economic value are insufficient to state a particularized injury for purposes of Article III

25  standing"); *see also Low*, 2011 WL 5509848, at *4; *LaCourt v. Specific Media, Inc.*, No. SACV
    10-1256-GW (JCGx), 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011); *In re Google, Inc.*

26  *Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012).

27  [5] Facebook also respectfully disagrees with the holding in *Fraley*, including to the extent it can be
    interpreted to mean that an alleged benefit to Facebook of pairing User content with

28  advertisements is sufficient to allege a cognizable injury.

Final Approval Order").)   That Facebook earns revenues from ads does not mean Plaintiffs suffered a cognizable injury to their interest in their names or likenesses.  *See Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *3-4 (N.D. Cal. Mar. 26, 2013) (refusing to find Article III standing based solely on a website's use of plaintiff's personal identification information ("PII") reasoning plaintiff did "not allege [that he] attempted to sell his PII, that he would do so in the future, or that he was foreclosed from entering into a value for value transaction relating to his PII"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, MDL Civ. No. 12-2358-SLR, 2013 WL 5582866, at *3 (D. Del. Oct. 9, 2013) (dismissing claims on Article III grounds because "plaintiffs [had] not sufficiently alleged that the ability to monetize their PII has been diminished or lost" by Google's collection and use of it); *see also Robyn Cohen v. Facebook, Inc.*, No. 10-cv-5282 RS, 2011 WL 5117164, at *3-4 (N.D. Cal. Oct. 27, 2011) (dismissing claims for lack of cognizable injury even though plaintiffs alleged that Facebook indirectly earned revenues from the use of their names and profile pictures).

Plaintiffs, in fact, do not allege that they ever intended to seek compensation for their endorsements or that a market for their endorsements exists.  Plaintiffs also do not allege that they have ever been paid for their endorsements or that Facebook's alleged use of their names or likenesses diminished the value thereof (if any).  Nor could they plausibly do so.  Plaintiffs' names and profile pictures were displayed—whether in a sponsored context or otherwise—only to the same friends with whom *Plaintiffs chose to share their content on Facebook*.  (SAC ¶¶ 28, 34, 36.)  Plaintiffs' allegations are insufficient to establish Article III standing for the same reasons this Court found no standing in the *Robyn Cohen* case related to Facebook's "Friend Finder" feature (which those plaintiffs also claimed were "ads").  *Robyn Cohen,* 2011 WL 5117164, at *3 ("the names and likenesses were merely displayed on the pages of other users who were already plaintiffs' Facebook 'friends' and who would regularly see, or at least have access to, those names and likenesses in the ordinary course of using their Facebook accounts").

Finally, that Plaintiffs alleged a violation of a statutory right does not provide standing under Article III.  The sole statutory claim alleged in the SAC is the Illinois Right of Publicity Act, 765 ILCS 1075.  But, as discussed below, Plaintiffs may not seek relief under that statute, as

they agreed that all claims arising out of their use of Facebook would be governed by California law and, further, they have not adequately alleged a violation of that statute.  Accordingly, the holding that standing may exist by virtue an alleged invasion of legal rights created by statute, *see Edwards v First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), is inapposite here.  Additionally, the mere alleged violation of a statute is not sufficient, without an allegation that the plaintiff also suffered a concrete injury-in-fact.  Facebook submits that *Edwards* is wrongly decided to the extent it holds that a statutory violation that *causes no actual injury to the plaintiff* gives rise to standing.  *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.")*; Robins v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) ("[E]ven when asserting a statutory violation, the plaintiff must allege 'the Article III minima of injury-in-fact'"); *Robyn Cohen*, 2011 WL 5117164, at *3 (the provision of statutory damages for individuals unable to *quantify* their harm "does not eliminate the requirement of a cognizable injury in the first instance").

### B.    The Court Should Dismiss Count I (Declaratory Relief) for Failure to State a Claim upon Which Relief Can Be Granted.

Count I of the SAC alleges that "Facebook's SSR [sic] violates [California Family] Code § 6701" and is "void and of no legal force and effect as between plaintiffs, and Facebook."  (SAC ¶¶ 66, 69; *see also id.* ¶ 51.)  Plaintiffs seek "a declaratory judgment . . . find[ing] the SRR to be absolutely void."  (*Id.* ¶ 74; Prayer for Relief ¶ (b).)  Alternately, Plaintiffs claim that "the SRR is governed by [California] Family Code § 6702 [sic][6] and is voidable at the discretion of Plaintiffs and Class Members."  (*Id.* ¶ 69.)  This claim fails for multiple reasons.

---

[6] Facebook previously pointed out that "Family Code § 6702" *does not exist*.  (Facebook's MTD the FAC, Dkt. 109, at 9 n.5.)  Despite this, Plaintiffs again, inexplicably, allege a violation of this phantom Family Code provision.  (SAC ¶ 69.)  Facebook again assumes that Plaintiffs intend to invoke § 6710, which governs a minor's right of disaffirmance in California, but Plaintiffs' repetition of this nonsensical claim constitutes either bad faith or a striking lack of diligence.

### 1.  Count I Is Precluded Under the Law-of-the-Case Doctrine.

Count I asks the Court to reverse Judge Murphy's ruling that the SRR is enforceable against Plaintiffs, which was a necessary finding underlying his transfer order.  (*See* Transfer Order, Dkt. 93.)  In short, Plaintiffs may not re-litigate this claim, which they have already asserted and lost.  Judge Murphy's ruling is the "law of the case" and is binding here.

Under the law-of-the-case doctrine, "'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citation omitted).  The doctrine applies to the decisions of a transferor court following a § 1404 transfer.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 & n.5 (1988); *see also, e.g.*, *NPR, Inc. v. Am. Int'l Ins. Co.*, 242 F. Supp. 2d 121, 126 (D.P.R. 2003) (applying doctrine after transfer under 28 U.S.C. § 1404(a)).  As numerous courts have recognized, "[a]dherence to law of the case principles is even more important . . . where the transferor judge and the transferee judge are not members of the same court." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982).  Consequently, "[w]hen an action is transferred, that which has already been done remains untouched . . . ." *Pac. Coast Marine Windshields v. Malibu Boats*, No. 1:11-cv-01594-LJO-BAM, 2011 WL 6046308, at *2 (E.D. Cal. Dec. 5, 2011); *see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1520 (10th Cir. 1991) (collecting cases).

Under settled law, the law of the case encompasses all questions "'decided explicitly or by necessary implication in [the] previous disposition.'" *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (citation omitted); *accord Thomas v. Bible*, 983 F.2d 152, 154-55 (9th Cir. 1993).  A district court can depart from such a decision only in "extraordinary circumstances," *Christianson*, 486 U.S. at 817, including a "change in circumstances, intervening decision of controlling law, or showing of manifest injustice," *Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996); *see also Alexander*, 106 F.3d at 876 (enumerating a five-part test).  Absent one of these requisite conditions, failure to apply the law-of-the-case doctrine is error.  *See Christianson*, 486 U.S. at 816 (reversing Seventh Circuit for failing to apply law-of-the-case doctrine); *Alexander*, 106 F.3d at 878 ("The district court's departure from the law of the case requires

reversal . . . ."); *Thomas*, 983 F.2d at 154-55 (same).

Count I of the SAC is plainly barred by the law-of-the-case doctrine.  This case was filed initially in the Southern District of Illinois.  Facebook moved for a transfer of venue to this District pursuant to the forum-selection clause in the SRR.  In its motion, Facebook argued that the forum-selection clause was enforceable against the minor Plaintiffs because of, among other reasons, Plaintiffs' past and continued Facebook use.  (Mtn. to Trnsfr., Dkt. 58, at 11-12.) Plaintiffs argued that the SRR was absolutely void under § 6701 (just as they do in Count I):

> Under California law, minors are statutorily forbidden from entering into a contract that purports to "give a delegation of power" or that relates to "any personal property not in the immediate possession or control of the minor." Cal. Fam. Code § 6701 (West 2004).  Facebook's SRR incorporates California law and purports to both delegate power and relate to personal property not in the minor's possession. . . .  Accordingly, the SSR [sic] is "absolutely void, with no necessity to disaffirm [it] to avoid [its] apparent effect." *Hakes Inv. Co. v. Lyons*, 137 P. 911, 912 (Cal. 1913). . . . As a result, no matter what actions the minors may have taken with respect to Facebook's contract, it cannot be binding upon them or any other minor.

(Opp. to Mtn. to Trnsfr., Dkt. 78, at 3-4.  *Compare id. with* SAC ¶¶ 66-69.)

Judge Murphy rejected this argument and enforced the SRR against Plaintiffs.  (Transfer Order, Dkt. 93, at 4-6.)  After acknowledging Plaintiffs' § 6701 arguments, the court ruled:

> In the specific context of forum-selection clauses, courts, including California courts, have readily declined to permit minors to accept the benefits of a contract, then seek to void the contract in an attempt to escape the consequences of a clause that does not suit them. . . . Plaintiffs have used and continue to use facebook.com. The Court concludes that Plaintiffs cannot disaffirm the forum-selection clause in Facebook's TOS, although Plaintiffs were minors when they entered the agreement containing the clause.

(*Id.* at 7-8 (discussing cases).)  Judge Murphy could not have enforced the forum-selection clause without also rejecting Plaintiffs' argument that the SRR is void under § 6701.  *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("An argument is rejected by the necessary implication when the holding stated or result reached is inconsistent with the argument.").  In moments of candor, even Plaintiffs acknowledge the far-reaching implications of this ruling. (Mtn. to Rcnsdr. Trnsfr., Dkt. 96, at 1) ("[T]he very crux of this litigation hinges on the legal enforceability of Facebook's Statement of Rights and Responsibilities against minors. . . . [T]his Court's ruling on Facebook's Motion to Transfer can be read as finding that contract may be

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

ratified and binding upon the minor plaintiffs.  Such a finding could be ruinous to their claims.").)

Plaintiffs cannot now be allowed to deny what they previously conceded.  Judge Murphy not only decided explicitly that the SRR is enforceable against Plaintiffs, he rejected the *very same arguments* Plaintiffs' first claim for relief now asserts.[7]  Judge Murphy's ruling is the law of the case and dispositively established the enforceability of the SRR as to the minor Plaintiffs. *See, e.g.*, *Sorensen v. Pyrate Corp.*, 65 F.2d 982, 984 (9th Cir. 1933) (where court's language "conclusively establish[d] that it regarded the original contract as valid," defendants were "precluded by the 'law of the case' now to attack the validity of the contract"); *NPR, Inc.*, 242 F. Supp. 2d at 126 (refusing to reconsider transferor judge's choice-of-law determination, which was "a crucial part of his transfer of venue analysis").[8]  Moreover, Plaintiffs cannot demonstrate any "extraordinary circumstances" that would justify departure.  *See Christianson*, 486 U.S. at 817.

### 2.   Count I Should Be Dismissed Because the SRR Is Neither Void Nor Voidable by Plaintiffs.

#### a.   The SRR Is Not Void Under California Family Code § 6701.

Even if Plaintiffs were not bound by the law of the case, under California law, "[e]xcept as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance under Chapter 2 (commencing with Section 6710)[.]"  Cal. Fam. Code § 6700.  Section 6701 provides that certain limited types of contracts with minors are absolutely void, including contracts that "[g]ive a delegation of power" or relate to "personal property not in the immediate possession or control of the minor."  *Id.* § 6701(a), (c).  Just as they argued before Judge Murphy, Plaintiffs claim that SRR § 10.1 violates both of these provisions,[9]

---

[7] Judge Murphy was not required to explain his rejection of Plaintiffs' arguments, as the law of the case extends to a court's holdings, not its reasoning.  *See Christianson*, 486 U.S. at 817; *accord Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995).

[8] *See also, e.g.*, *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1098 (N.D. Cal. 2005) (law-of-the-case doctrine bars motion that "advance[d] the same general attack" as previously-denied motion); *In re Extradition of Coe*, 261 F. Supp. 2d 1203, 1206 (C.D. Cal. 2003).

[9] Currently, SRR § 10.1 provides:  "You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place."

12.

1   making the SRR "absolutely void, with no necessity to disaffirm [it]." (SAC ¶ 68 (citation and

2   quotation marks omitted).) As Judge Murphy correctly ruled, this claim is contrary to the law.

3       Section 6701 is inapplicable on its face to SRR § 10.1. Cases construing § 6701(a) and its

4   predecessor statute, Civil Code § 33, demonstrate that the proscription against a minor's

5   contractual "delegation of power" relates to a minor's ability to appoint an agent. *See, e.g.*, *Hakes*

6   *Inv. Co. v. Lyons*, 137 P. 911, 912 (1913) (explaining that "the intention of the Legislature in

7   framing § 33 of the Civil Code" was to overrule judicial precedent and "declare the rule that an

8   infant could not execute contracts through an agent having only a delegated authority executed by

9   the infant").[10] Case law similarly confirms the irrelevance of § 6701(c), which prevents minors

10  from assigning "a future interest," such as designating a beneficiary under an annuity contract.

11  *See Sisco v. Cosgrove, Michelizzi, Schwabacher, Ward & Bianchi*, 51 Cal. App. 4th 1302, 1307

12  (1996) ("A minor cannot make a contract relating to any personal property not in the immediate

13  possession or control of the minor. Thus, a minor cannot contract with respect to a future

14  interest."); *Morgan*, 220 Cal. App. 2d at 675 (voiding assignment of right to wages). These cases

15  bear no similarity to Plaintiffs' consent to Facebook's use of their names and likenesses, which is

16  a right that, at all times, has been in their immediate custody and control. *See Taylor v. Indus.*

17  *Accident Comm'n*, 216 Cal. App. 2d 466, 474 (1963) (minor had capacity to make a contract

18  relating to sale of newspapers in his possession).

19      This Court is no stranger to these arguments, having considered and rejected them when

20  analyzing the settlement in *Fraley v. Facebook, Inc.*, No. 11-cv-01726-RS. Some of the objectors

21  there were represented by Plaintiffs' counsel here, and they insisted that the terms of the

22  settlement were insufficient as to minors because of § 6701(a) and (c). The Court disagreed,

23  finding that, "[w]hile Family Code § 6701(a) prevents minors from entering into enforceable

24  'delegation[s] of power' and § 6701(c) limits their ability to contract away rights to 'personal

---

[10] *See also, e.g.*, *Blankenship v. Hearst Corp.*, 519 F.2d 418, 425 (9th Cir. 1975); *Schram v. Poole*, 111 F.2d 725, 727 (9th Cir. 1940); *Schumm v. Berg*, 37 Cal. 2d 174, 182 (1951) (contract by minor's purported agent void); *Morgan v. Morgan*, 220 Cal. App. 2d 665, 674 (1963); *Chaffin v. Wallace Fin. Co.*, 136 Cal. App. 2d Supp. 928, 929 (1955)

Cooley LLP
Attorneys At Law
San Francisco

13.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

property, not in the immediate possession or control of the minor,' neither subsection is implicated by the circumstances here."   (*Fraley* Final Approval Order at 13 n.14.)   Other California law confirms § 6701's inapplicability to this case.   Under the Family Code, "[a] contract pursuant to which a minor agrees to . . . license . . . use of a person's likeness" is expressly *not* void, and is, instead, subject to a limited right of disaffirmance under § 6710.[11]   *See* Cal. Fam. Code § 6750(a)(2).   Section 6751 further limits this power of disaffirmance by providing that a minor cannot disaffirm such a contract, once the contract has been approved by a court.   *See id.* §§ 6750(a)(2), 6751.[12]   Plaintiffs' position is irreconcilable with these provisions.

### b.   The SRR Is Not Voidable Under California Family Code § 6710.

Plaintiffs' reliance on § 6710 (misidentified as § 6702) (SAC ¶ 69) is equally misplaced. As an initial matter, Facebook's transfer motion explicitly argued that Plaintiffs' obligations under the SRR were not voidable under § 6710 (*see* Mtn. to Trnsfr., Dkt. 58, at 11-12), and Plaintiffs failed to address this argument in their opposition (*see* Opp. to Mtn. to Trnsfr., Dkt. 78, at 3-4) or in their motion for reconsideration (*see* Mtn. to Rcnsdr. Trnsfr., Dkt. 96, at 3-6). Plaintiffs have waived this claim, and they cannot undo that waiver by framing these untimely arguments as a new count in their amended complaint.   *See, e.g., Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (collecting cases) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment") (citation and quotation omitted); *Soriano v. Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK, 2011 WL 2175603, at *2 (N.D. Cal. June 2, 2011) (same).

Moreover, under § 6710, a minor's power to disaffirm his obligations under a contract is limited in several important respects, each of them fatal to Plaintiffs' claim here.   A minor cannot

---

[11] The limitations on that right are highly relevant here and are discussed immediately below.

[12] *See also Warner Bros. Pictures, Inc. v. Brodel*, 31 Cal. 2d 766, 777 (1948) (former Civil Code § 36 (Family Code §§ 6750-51's predecessor statute) "withdraw[s] the right of disaffirmance from minors"); *accord Morgan*, 220 Cal. App. 2d at 672.  If a minor's contract to license the use of her likeness were absolutely void, as Plaintiffs contend, §§ 6750 and 6751 would "be rendered superfluous, in contravention of the rules of statutory interpretation."   *See, e.g., Golden W. Ref. Co. v. Suntrust Bank*, 538 F.3d 1233, 1239 (9th Cir. 2008) (collecting cases); *Big Creek Lumber Co. v. Cnty. of Santa Cruz*, 38 Cal. 4th 1139, 1155 (2006).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

1    continue to receive the benefits of a contract he purports to disaffirm because he must either

2    remain bound by the contract or "disaffirm the entire contract, not just the irksome portions."

3    *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417, 421 (1969); *A.V. v.*

4    *iParadigms, LLC*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008) (rejecting minors' attempt to

5    disaffirm online contract after receiving its benefits (i.e., their past use of website), noting

6    "Plaintiffs cannot use the infancy defense to void their contractual obligations while retaining the

7    benefits of the contract."), *aff'd in part, rev'd in part on other grounds*, 562 F.3d 630 (4th Cir.

8    2009).  This principle foreclosed disaffirmance in *Paster v. Putney Student Travel, Inc.*, CV 99-

9    2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999), where the plaintiff sought to disaffirm

10   a contractual forum-selection clause after completing a travel program sponsored by the

11   defendant.  *Id.* at *1-2.  Applying California law, the court rejected that attempt, holding that

12   "Plaintiff . . . cannot accept the benefits of a contract and then seek to void it in an attempt to

13   escape the consequences of a clause that do[es] not suit her."  *Id.* at *2.

14         Under this principle, Plaintiffs cannot disaffirm their obligations under the SRR because

15   they already received (and continue to receive as of the date of this filing) the benefits of using

16   Facebook.   (Transfer Order, Dkt. 93, at 8 ("Plaintiffs have used and continue to use

17   facebook.com"); SAC ¶¶ 2-6.)[13]   Plaintiffs' continued enjoyment of Facebook negates the

18   "unequivocal intent to repudiate [the SRR's] binding force and effect" that is required to

19   disaffirm the SRR.  *Spencer v. Collins*, 156 Cal. 298, 303 (1909).

20         Similarly, as in *Paster*, Plaintiffs' past acceptance of contractual benefits—their

21   longstanding use of Facebook—precludes them from disaffirming the SRR to avoid § 10.1.[14]

22   (SAC ¶¶ 2-6; Solanki Decl. Ex. B.)  Courts in California have long rejected attempts to wield "the

23   privilege of infancy as a sword, and not as a shield."  *Toon v. Mack Int'l Motor Truck Corp.*, 87

---

[13] The SAC states that each of the named Plaintiffs "*is* a facebook user" (SAC ¶¶ 2-6 (emphasis added)), and Facebook's records indicate that they all continue to regularly access the website.

[14] *See also Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153-54 (N.D. Ill. 1997) (minors cannot "retain[] the advantage" while disaffirming contract); *Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) ("If [a] minor chooses benefits under the contract, he may not avoid his obligations thereunder."); 5 Williston on Contracts § 9:14 (4th Ed.)

Cal. App. 151, 154 (1927); *see also MacGreal v. Taylor*, 167 U.S. 688, 701 (1897) (same); (Transfer Order, Dkt. 93, at 6).  At all relevant times, Plaintiffs' use of Facebook was subject to the SRR.  Plaintiffs' (inadequate) effort to disaffirm the SRR now is a transparent attempt to escape their past consent and to hold Facebook liable for conduct that was expressly authorized by Plaintiffs.  As numerous courts have recognized, a minor's contract is "good until disaffirmed; and . . . disaffirmance [does] not have the retroactive effect of making the defendant a tort-feasor for [acting in accordance with a contract] which had not been disaffirmed at the time." *Carolina Tel. & Tel. Co. v. Johnson*, 168 F.2d 489, 494 (4th Cir. 1948); *Morgan,* 220 Cal. App. 2d at 674 (affirming that minor "could not by disaffirming his endorsement turn the [subsequent] endorser's rightful acts into wrongful ones"); *see L.P. Steuart & Bro., Inc. v. Capital View Realty Co.*, 112 F.2d 583, 584 (D.C. Cir. 1940) ("Until the disaffirmance by [the minor], the authorized acts . . . were not wrongful"); *Casey v. Kastel*, 237 N.Y. 305, 312 (1924) (same).

> **C.**     **Plaintiffs Are Not Entitled to the Declaratory Relief Sought in Count II.**

Count II of the SAC seeks improper, advisory rulings on issues not presented by Plaintiffs' current claims, namely, whether the COPPA preempts § 6701 and whether it preempts unspecified states' right-of-publicity laws.  Neither of those questions is properly at issue here. Accordingly, Count II fails and should be dismissed with prejudice.

> **1.**     **No "Actual Controversy" Exists as to COPPA's Preemption of § 6701.**

The Declaratory Judgment Act requires the existence of an actual case or controversy. 28 U.S.C. § 2201 ("In a case of actual controversy . . . . [a federal court] may declare the rights and other legal relations of any interested party seeking such declaration"); *Steffel v. Thompson*, 415 U.S. 452, 458 (1974) (requirements of "actual controversy" and Article III, § 2 are synonymous); *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (same).  A plaintiff's alleged harm must be "complete or imminent, not 'hypothetical.'" *Dock v. Nevada*, No. 2:10-cv-00275-RCJ-LRL, 2010 WL 5441642, at *3 (D. Nev. Dec. 28, 2010) (citing *Calderon v. Ashmus*, 523 U.S. 740, 745-46 (1998)); *Alvarez v. Smith*, 558 U.S. 87, 93 (2009) ("[A] dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls

Cooley LLP
Attorneys At Law
San Francisco

16.

Facebook's Motion to Dismiss the SAC
Case No. 12-CV-01216-RS

outside the scope of the constitutional words 'Cases' and 'Controversies'." (citations omitted)).[15]

Count II is premised on Plaintiffs' assertion that "[t]he existence of Facebook's [claims of COPPA preemption] in the face of Family Code § 6701 injects unnecessary uncertainty into the rights and responsibilities of the parties." (SAC ¶ 84.)  However, contrary to Plaintiffs' assertion, Facebook does not now, nor has it previously, argued that COPPA preempts § 6701.[16] Thus, there is no actual controversy concerning whether COPPA preempts § 6701, nor has there been previously in this action.[17]

### 2. No "Actual Controversy" Exists as to COPPA's Preemption of Unidentified "State Laws."

In its Motion to Dismiss the FAC, Facebook asserted that COPPA preempted the parental consent requirement of § 3344.  (Facebook's MTD the FAC, Dkt. 109, at 19-21.)  However, Facebook's previous arguments concerning § 3344 are not relevant here because the SAC does not contain a claim based on § 3344.  Instead, the only right-of-publicity claim Plaintiffs bring arises under the Illinois Right of Publicity Act, 765 ILCS 1075/30.  Section 1075 does not contain a parental consent requirement, and Facebook does not now contend that Plaintiffs' claims pursuant to it are preempted by COPPA.  There is no actual controversy between the Parties concerning COPPA, and Count II should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

---

[15] *Accord Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement [underlying the declaratory relief action] must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."); *see also Coffman v. Breeze Crop.*, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy . . .[;] it may not be made the medium for securing an advisory opinion in a controversy which has not arisen."); *ICU Med., Inc. v. B. Braun Med. Inc.*, No. C 01-3202 CRB, 2005 WL 588341, at *9 (N.D. Cal. Mar. 14, 2005) ("courts are forbidden from rendering advisory opinions").

[16] Facebook previously asserted that COPPA preempted *the parental consent requirement of § 3344*, but it has *never* claimed that COPPA preempts § 6701 or the Illinois Right of Publicity Act (which notably does *not* contain any parental consent requirement)—the only statutes Plaintiffs have put at issue here.  (*See* Facebook's MTD the FAC, Dkt. No. 109, at 19-21.)

[17] If Count I is not dismissed, Facebook reserves the right to assert all defenses to Count I, including that § 6701 may be preempted by COPPA if applied in the manner Plaintiffs advocate.

Cooley LLP
Attorneys At Law
San Francisco

17.

Facebook's Motion to Dismiss the SAC
Case No. 12-CV-01216-RS

**D.  Plaintiffs' Claims under Counts III and IV for Violation of the Illinois Right of Publicity Act Should be Dismissed.[18]**

**1.  The SRR's Choice-of-law Provision Bars Claims under Illinois Law.**

The SRR provides that the laws of California govern "any claim that might arise between you and us." (Solanki Decl. Ex. B, § 16.1.)  Because this choice-of-law provision is valid and enforceable, Plaintiffs may not bring a claim under an Illinois statute.

To enforce the choice-of-law provision, the Court must look to the principles that would have been applied by the Southern District of Illinois.  *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993) (a federal court sitting in diversity must apply the choice-of-law rules of the court where the action was originally brought).  Under Illinois law, the court will apply the parties' choice of law unless (1) it contravenes the state's fundamental public policy or (2) the chosen state does not bear a reasonable relationship to the parties or transaction.  *See Cunningham Charter Corp. v. Learjet, Inc.*, 870 F. Supp. 2d 571, 575 (S.D. Ill. 2012) (citing *Newell Co. v. Petersen*, 325 Ill. App. 3d 661, 686 (2001) and Restatement (Second) of Conflict of Laws § 187 (1971)); *see also Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994) (noting Illinois courts have long allowed parties to "substitute the laws of another place or country" (quoting *McAllister v. Smith*, 17 Ill. 328, 334 (1856))).

Here, the parties and transaction bear a strong relationship to California, where Facebook is headquartered.  This alone establishes a "reasonable relationship" with California for purposes of the choice-of-law provision.  *See Thomas v. Guardsmark, Inc.* 381 F.3d 701, 706 (7th Cir. 2004) (noting under Illinois law, a sufficient relationship is established when the choice of law is the state where one of the parties is headquartered (citing *Newell*, 325 Ill. App. 3d at 686-87))).

Further, Plaintiffs have not, and cannot, allege that the application of California law in this case would contravene any fundamental policy of Illinois.  A fundamental policy must be "substantive" and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining

---

[18] The SAC is based, at least in part, on the display of minors' names and likenesses in Sponsored Stories.  Were any claim to move forward, the putative class would be limited to any minors who have opted out of the settlement in *Fraley*.

power."  *See* Restatement (Second) of Conflict of Laws § 187, cmt. g.  There is no such policy at issue here.  Like Illinois, California provides a statutory right of publicity which prohibits the use of a person's identity without consent.  *See* Cal. Civ. Code § 3344; 765 ILCS 1075/30.  Mere differences between states' laws do not justify obviating the parties' choice of law.  *See Vencor*, 33 F.3d at 844-45 (differences in Illinois and Kentucky law in enforcement of non-compete provisions was not evidence that the Kentucky law violated a "fundamental public policy of the state of Illinois"); *McAllister*, 17 Ill. at 334 ("we find numberless cases, with great uniformity, sanctioning the enforcement of contracts made under and sanctioned by the laws of another State, which are not allowed by the laws of the State where suit is brought, or where a different rule prevails"); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759 (1987) (differences in the laws are not enough; the "public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties").[19]  Plaintiffs cannot assert that the application of California's laws, which Plaintiffs rely upon for other portions of their claims, would violate the public policy of Illinois. *See Cunningham Charter Corp. v. Learjet, Inc.*, 870 F. Supp. 2d 571, 575 (S.D. Ill. 2012) (enforcing choice of law clause where "neither party contends that Kansas law contravenes a fundamental public policy of Illinois").

Where, as here, a choice-of-law provision is valid and enforceable, the parties may not bring claims under the laws of another state but must pursue their claims under the selected law. *See Midway Home Entm't Inc. v. Atwood Richards Inc.*, No. 98-C-2128, 1998 WL 774123, at *7 (N.D. Ill. Oct. 29, 1998) (finding New York choice-of-law clause enforceable and on that basis dismissing Illinois Consumer Fraud Act claim).[20]  Counts III and IV should be dismissed.[21]

---

[19] Where Illinois courts have found a violation of a fundamental public policy, they have often done so because the law of the foreign state is *directly contrary* to a declared legislative purpose of Illinois, a conflict not present here. *See Korean Am. Broad. Co. v. Korean Broad. Sys.*, No. 09-C-6665, 2012 WL 1080260, at *2-3 (N.D. Ill. Mar. 29, 2012) (refusing to enforce choice-of-law provision in franchise contract because it would obviate Illinois Franchise Act, 815 ILCS 705/4, which states "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void."); *McCoy v. Gamesa Tech. Corp., Inc.*, No. 11-C-592, 2012 WL 245162, at *4-5 (N.D. Ill. Jan. 26, 2012) (similar).

[20] *See also WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 867-68 (N.D. Ill. 2000); *Janice Doty Unlimited, Inc. v. Stoecker*, 697 F. Supp. 1016, 1019-21 (N.D. Ill. 1988); *Potomac Leasing*, 156

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

**2.      Plaintiffs Also Fail to State a Claim for Relief Under Illinois Law.**

Even if Plaintiffs could assert an Illinois Right of Publicity Act claim, the SAC fails to allege facts in support of at least the following elements: (1) appropriation of plaintiff's name or likeness; (2) without plaintiff's consent; and (3) for another's commercial benefit. *See* 765 ILCS 1075/30; *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013).

*First*, Plaintiffs expressly consented to the use of their names and profile pictures in connection with commercial or sponsored content under the SRR, by which they are bound as a matter of law and according to the law of the case.  SRR § 10.1 states, in part: "You give us permission to use your name and profile picture in connection with [commercial, sponsored, or related content (such as a brand you like) served or enhanced by us], subject to the limits you place."[22]  (SAC ¶ 59 (quoting SRR § 10.1); *see also* FAC ¶ 48 (quoting SRR § 10.1); Orig.

---

Ill. App. 3d at 758-61; *Telular v. Mentor Graphics Corp.*, No. 01 C 431, 2002 U.S. Dist. LEXIS 26744, at *2-5 (N.D. Ill. Feb. 12, 2002).

[21] Even if Plaintiffs' claim that § 10.1 of the SRR violates § 6701 had merit, which it does not, such a claim would render only that portion of the SRR void, and would not preclude enforcement of the separate choice-of-law provision, § 16.1.  Minors are permitted to enter into contracts with Facebook regarding many subjects (*see* § 6700); a choice concerning applicable law does not even arguably fall under § 6701(a) or (c).  Both the SRR and California law support this result.  (Solanki Decl. Ex. B § 19.3 ("If any portion of this [SRR] is found to be unenforceable, the remaining portion will remain in full force and effect.")); *Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 123-24 (2000); Civil Code § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful[,] . . . the contract is void as to the latter and valid as to the rest.").  The two California decisions cited in the SAC (SAC ¶ 87) do not address the severability of allegedly voided portions of a contract or otherwise alter the result here.  In *Spinney v. Griffith*, 98 Cal. 149, 152 (1893), the court analyzed a provision in the Code of Civil Procedure which declared that in all written contracts between owners and contractors, any failure in execution would make the contracts "wholly void."  Family Code § 6701 contains no similarly all-encompassing language.  *Fergus v. Songer*, 150 Cal. App. 4th 552, 558 (2007), discusses Business and Professions Code § 1647, which outlines when certain contingency fee agreements are "voidable," not, as here, where the agreement is alleged to be void in the first instance.  These decisions do not establish that if a portion of the SRR is void, no party may demand performance of any part of it.

[22] Previous versions of the SRR have been to the same effect.  Indeed, the versions in place at the time every Plaintiff registered for Facebook also authorized this conduct.  (Muller Decl. Exs. A-F; Solanki Decl. Ex. A.)  Facebook's Data Use Policy, which is referenced in the SRR that Plaintiffs quote in the SAC, also provides notice to all Users of how their names and profile pictures may be used in connection with advertising and sponsored content.  (*See* Solanki Decl. Ex. C, Data Use Policy - How advertising and Sponsored Stories work ("Facebook Ads are sometimes paired with social actions . . . .  This is the same type of news story that could show up in your News

Cooley LLP
Attorneys At Law
San Francisco

20.

Facebook's Motion to Dismiss the SAC
Case No. 12-CV-01216-RS

1   Compl., Dkt. 2, ¶ 21 (quoting SRR § 10.1).)  As Judge Murphy previously noted, Users must

2   attest that they have read the SRR when registering for Facebook, and the SRR is hyperlinked on

3   each page of the website, giving Users actual and constructive notice of the terms to which they

4   are agreeing whenever they access the website.  (Transfer Order, Dkt. 93, at 10-11.)  Plaintiffs'

5   legally enforceable consent to these terms is now the law of the case.  Indeed, Plaintiffs have not

6   alleged, in any manner, that they *did not* consent to Facebook's written terms or to the use of their

7   name and profile picture in a commercial context.  Instead, they rely exclusively on the claim that

8   they *could not* consent because they were minors.  For the reasons discussed *supra* III.B, this

9   argument fails and does not vitiate the express written consent that all Facebook Users give for

10  the use of the content they shared in the manner alleged in the SAC.

11      In fact, Plaintiffs already admitted that they consent to the use of their names and profile

12  pictures in ads (Orig. Compl., Dkt. 2, ¶ 21 ("facebook's non-negotiable terms of membership

13  provide that its users consent to use of their names and likenesses in advertising")), and that,

14  unless they are able to void the SRR (which they cannot do), their claims stand little chance (*see*

15  Mtn. to Rcnsdr. Trnsfr., Dkt. 96, at 1) ("[T]his Court's ruling on Facebook's Motion to Transfer

16  can be read as finding that contract may be ratified and binding upon the minor plaintiffs.  Such a

17  finding could be ruinous to their claims.")).  This judicial admission is damning.[23]

18      *Second*, Plaintiffs do not allege with any specificity that Facebook gained any commercial

19  benefit from the alleged use of Plaintiffs' individual names and profile pictures.  Instead,

20  Plaintiffs rely on generic allegations about the potential economic value of endorsements *to*

21  *advertisers*.  (SAC ¶¶ 37-38.)  Even if the allegations concerning the value of some endorsements

22  to advertisers were true, Plaintiffs do not claim that *their* endorsements in Social Ads or

23

24  Feed. . . . If you do not want to appear in stories paired with Facebook Ads, you can opt out using
    your 'Edit social ads' setting . . . . [W]e allow people to 'sponsor' your stories to make sure your
25  friends and subscribers see them. . . .  If they do sponsor a story, that story will appear in the same
    place ads usually do or in your News Feed under the heading 'Sponsored' or something similar.
26  Only people that could originally see the story can see the sponsored story . . . .").)

27  [23]  Although Plaintiffs allege that Facebook "had not obtained consent of Plaintiffs' parents or
    guardians" (SAC ¶¶ 94, 110), that it is of no legal significance to their claims, because there is no
28  parental consent requirement under the Illinois Right of Publicity Act.

Sponsored Stories have any value from which Facebook could have appropriated some commercial benefit.  Further, Plaintiffs do not allege that their names and likenesses have any independent value from which they have, or could have, sought a commercial benefit.  Nor do they allege that they were deprived of that benefit.  In short, they have not alleged any fact that, if true, would support a conclusion that Facebook commercially benefitted from the use of their name or profile picture.

*Third*, Plaintiffs' Illinois claims are barred by Section 230 of the Communications Decency Act ("CDA § 230"), which states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The statute provides "blanket immunity from tort liability for online republication of third party content," *Barrett v. Rosenthal*, 40 Cal. 4th 33, 57 (2006), including right-of-publicity claims, *see Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1125 (9th Cir. 2003); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007).  Immunity attaches whenever: (1) the defendant provides an interactive computer service; (2) the cause of action treats the defendant as a publisher or speaker of the information; and (3) the information is provided or developed by another information content provider.  *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (2002).  These elements are met here.

Facebook is an "interactive computer service," defined as "any information service . . . that provides or enables computer access by multiple users to a computer server . . . ."  *See* 47 U.S.C. § 230(f)(2); *Finkel v. Facebook, Inc*., No. 102578/09, 2009 WL 3240365, at *1 (N.Y. Sup. Ct. Sept. 15, 2009); *see also Roommates.com*, 521 F.3d at 1162 n.6 ("[T]he most common interactive computer services are websites.").  Plaintiffs' claims also treat Facebook as the "publisher or speaker" of the challenged content, because "the duty . . . [allegedly] violated derives from the defendant's status or conduct as a 'publisher or speaker.'"  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  Plaintiffs' claims challenge Facebook's display of Plaintiffs' names and photographs on Facebook (*e.g.,* SAC ¶¶ 24, 25), which is classic "publishing conduct" to which CDA § 230 immunity can attach.  *See Barnes*, 570 F.3d at 1102 ("publication involves reviewing, editing, and deciding whether to publish or to withdraw from

22.

publication third-party content"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

The challenged content was also provided by "another information content provider."  In particular, Sponsored Stories incorporate information provided by the Users themselves (who provide stories about their "Likes" and other interactions with Facebook Pages), and Social Ads pair User content with content from third-party advertisers.  The SAC, in fact, quotes Facebook's statements concerning the sources of this content.  (SAC ¶ 28 ("Sponsored Stories . . . *redisplay* a story about a user's social actions [] to the same group of Facebook Friends to which the *user had originally published the story*.  Social ads . . . display a user's social actions *alongside content created by the business*[.]" (emphasis added)); SAC Ex. 2, at 2, 4, 6, & 7 (informing advertisers "you'll be asked to design your ad including headline, body text and image.").)  Facebook's provision of the "Like" button and other social tools does not lessen its immunity.  Users themselves are the authors of "Like" stories because they alone decide what to Like on Facebook, as well as whether they will Like content at all.  (*See* SAC ¶¶ 22, 28, 30, 36.)  Because the Like button "does nothing more than provide options that [Users] may adopt or reject at their discretion," and because "[t]he selection of the content [is] left exclusively to the user," the Like button is a "'neutral tool' of the kind uniformly permitted within the scope of CDA immunity." *Goddard*, 640 F. Supp. 2d at 1197, 1198 (Google keyword suggestion tool entitled to immunity).[24]  The same goes for other content implicated by Plaintiffs' allegations—for example, stories about a User's comment on a Facebook Page, vote in a Facebook poll, or RSVP to a Facebook event—all of which are generated by voluntary use of neutral tools provided by Facebook.  (SAC ¶ 29); *see id.* & cases cited *supra* note 24.

Plaintiffs also cannot plead around CDA § 230 by attacking Facebook's decision (through an automated algorithm) to redisplay User stories (Sponsored Stories) or to pair them with third-party ad content (Social Ads).  Facebook's role with respect to Social Ads is merely editorial,

---

[24] *See also, e.g.*, *Roommates*, 521 F.3d at 1169, 1175 (drop-down menus and comment boxes do not make website a content provider); *Carafano*, 339 F.3d at 1124-25 (same as to "pre-prepared responses"); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010); *Hill v. Stubhub, Inc.*, 727 S.E.2d 550, 559 (N.C. Ct. App. 2012).

Cooley LLP
Attorneys At Law
San Francisco

23.

Facebook's Motion to Dismiss the SAC
Case No. 12-CV-01216-RS

consisting of "matching an individual user . . . to criteria established by Facebook or by a paid advertiser" and then "combin[ing] the selected user's name and profile picture with an advertisement[.]"  (SAC ¶¶ 24-25.)  That process, as well as Facebook's decision to redisplay User stories in Sponsored Stories, amounts to protected editorial conduct under CDA § 230.  *See Carafano*, 339 F.3d at 1124 ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process[.]" (citation omitted)); *see also Barnes*, 570 F.3d at 1105; *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003) (collecting cases); *Evans v. Hewlett-Packard Co.*, No. 13-cv-02477-WHA, 2013 WL 5594717, at *4 (N.D. Cal. Oct. 10, 2013).  Nor does it matter that Facebook received payment for the alleged ads.  *See, e.g.*, *Evans*, 2013 WL 5594717, at *4 (defendant's profits from challenged display irrelevant to CDA § 230 immunity); *Levitt v. Yelp! Inc.*, No. 10-cv-1321 EMC, 2011 WL 50795526, at *7 (N.D. Cal. Oct. 26 2011) (motivation for republishing content irrelevant to CDA § 230 immunity); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008); *Gentry*, 99 Cal. App. 4th at 822, 828-31.

Plaintiffs' conclusory assertion that the advertisements include "Facebook authored text and design elements" (SAC ¶ 25) also does not defeat immunity.  Regarding alleged "design elements," a website's formatting of third-party content is plainly editorial conduct protected by CDA § 230.  *See, e.g.*, *Carafano*, 339 F.3d at 1124-25.  As to alleged "Facebook authored text," the allegation is vague and non-specific to the point of being unintelligible.  For instance, it is nonsensical to claim that Facebook "authors" a story that a User "Likes" a particular Facebook Page, whether or not the User physically types those words into the computer.[25]  Plaintiffs also nowhere allege that Facebook writes ad copy.  To the contrary, the content (*i.e.*, ad) that is paired with Users' social actions is provided by third parties—namely, advertisers.  (SAC ¶¶ 28, 32, 36.)  The odd phrasing Plaintiffs chose—"Facebook authored text and design elements"—seems intended to obscure the otherwise notable absence of an allegation that Facebook actually wrote

---

[25] Not only is "clicking on the 'like' button" and the resulting publication of a Like statement plainly User speech, it is, in fact protected by the First Amendment.  *Bland v. Roberts*, No. 12-1671, 2013 U.S. App. LEXIS 19268, at *45 (4th Cir. 2013).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS

1   the content of any third-party ads.  In any case, Plaintiffs conclusory allegations do not allow

2   them to avoid dismissal.  *Evans*, 2013 WL 5594717, at \*3-\*4 (merely alleging that "defendants

3   'created, designed, developed and [] transformed' parts of advertisement content . . . simply

4   state[s] legal conclusions and therefore fail[s] to meet the *Twombly/Iqbal* standard").[26]

5            **E.      Plaintiffs' Claims Should Be Dismissed with Prejudice.**

6           The Court may consider a range of factors when exercising its discretion to deny leave to

7   file an amended complaint.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

8   Importantly, "[t]he district court's discretion to deny leave to amend is particularly broad where

9   plaintiff has previously amended the complaint."  *Id.* (quoting *Ascon Props., Inc. v. Mobil Oil

10  Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298

11  (9th Cir. 1998) (leave to amend should not be granted where amendment would be futile).  Here,

12  Plaintiffs have filed two amended complaints, both with the benefit of using Facebook's motions

13  to dismiss to guide their pleadings and access to the full record of public proceedings in *Fraley*.

14  They nonetheless have been unable to state any sustainable claim.  Further, Plaintiffs' counsel has

15  previously dismissed similar claims brought in Los Angeles Superior Court, following

16  Facebook's successful demurrer.  (Brown Decl. Exs. G, I.)  In that action, Plaintiffs' counsel filed

17  two complaints in *David Cohen v. Facebook, Inc.*, No. BC444482 (L.A. Super. Ct.), and two

18  complaints in *Meth v. Facebook, Inc.*, No. BC 454799 (L.A. Super. Ct.), before the cases were

19  consolidated, and two additional complaints following consolidation.  (Brown Decl. Exs. B-F, H.)

20          No further amendment opportunities are justifiable.

21  **V.     CONCLUSION**

22          For these reasons, the SAC and all its claims should be dismissed with prejudice.

23  Dated: November 5, 2013                    COOLEY LLP

24                                             */s/ Matthew D. Brown*
25                                             MATTHEW D. BROWN (196972)
                                               Attorneys for Defendant FACEBOOK, INC.

    873759/SD
26

_____

27  [26] Facebook respectfully submits that the *Fraley* court erred by accepting the plaintiffs'
28  conclusory allegations that Facebook was a content provider, and that the ruling in *Evans* hews
    more closely to the standard established in the *Iqbal* and *Twombly* decisions.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 12-CV-01216-RS