IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

C.M.D., et al.,

                Plaintiffs,

  v.

FACEBOOK, INC.,

                Defendant.
_____/

No. C 12-1216 RS

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

This putative class action, originally filed in the Southern District of Illinois, initially advanced a single claim. Plaintiffs sought statutory damages for defendant Facebook's alleged commercial misappropriation of the names and likenesses of minors who utilize the Facebook social network website. In connection with a motion to intervene these plaintiffs brought in *Fraley v. Facebook*, C 11-01726 RS, counsel represented that a settlement of that action would, effectively, foreclose the claims alleged here. The named plaintiffs, however, exercised their right to opt-out of the *Fraley* settlement, and after that settlement received final approval, they recast their claims in this action. At least at this juncture, Facebook is not contending the *Fraley* settlement provides a basis for dismissal, although it does assert the settlement will limit membership in the putative class here to those who opted out in *Fraley*.

The operative Second Amended Complaint ("SAC") sets out four counts. The first two counts seek declaratory relief, and the latter two assert claims under an Illinois statute prohibiting the "use of an individual's identity for commercial purposes" without prior written consent. For reasons explained below, all four claims require plaintiffs to have a tenable basis for challenging the enforceability of Facebook's Statement of Rights and Responsibilities ("SRRs") that purport to govern the use of the Facebook site. Because plaintiffs have not articulated a viable legal theory on which the SRRs could be found unenforceable, the complaint must be dismissed.

## II. BACKGROUND

This action, like *Fraley*, involves practices by which Facebook utilizes the names and profile pictures of its users in ways that arguably constitute advertising for various third parties. The putative plaintiff class in this action is composed solely of minors; a subclass in *Fraley*. Facebook insists it does nothing more than take information its users have voluntarily shared with their Facebook friends, and republish it to those same friends, "sometimes alongside a related advertisement."[1]

Before arriving at that question, the threshold issue is whether Facebook's SRRs are legally enforceable. Plaintiffs effectively concede that if the SRRs are enforceable, they include written consent to the challenged use of names and profile photos, such that the underlying damages claims are not viable.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to

---

[1] *Fraley* involved only a Facebook program known as "Sponsored Stories." This case also includes a program called "Social Ads," which allows third parties to add their own content to the user material that is displayed.

2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*. The determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id*. at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.[2] See *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Here, Facebook's motion does not take issue with the sufficiency of the facts pleaded *per se*, and instead argues that plaintiff's legal theory is fatally flawed, for various reasons. As explained below, even though not all of Facebook's arguments are persuasive, plaintiffs' basic legal theory is indeed untenable.

## IV. DISCUSSION

A. <u>Standing</u>

Facebook first contends plaintiffs lack Article III standing to bring this action, arguing they have failed to present facts showing they suffered any legally cognizable harm from the alleged conduct. While similar general arguments were initially accepted in *Cohen v. Facebook, Inc.*, 2011 WL 5117164, at *3-4 (N.D. Cal. 2011), they were rejected in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011).

To the extent *Fraley* and *Cohen* are distinguishable from each other, this action has more in common with *Fraley* than it does with *Cohen*. Both here and in *Fraley*, but not in *Cohen*, plaintiffs have alleged that their names and likeness are used to endorse third-party products, companies, and

---

[2] Facebook also challenges plaintiffs' standing under Rule 12 (b)(1). A court may dismiss a claim under that rule based on a lack of subject matter jurisdiction, and the motion may attack either the complaint on its face or the existence of jurisdiction in fact. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 732-33 (9th Cir. 1979). If a complaint does not establish standing under Article III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

1  brands, with a resulting inference that those endorsements have "concrete, measurable, and provable
2  value in the economy at large." *Fraley*, 830 F. Supp. 2d at 799.

3  Furthermore, as *Fraley* points out, "a plaintiff may be able to establish constitutional injury
4  in fact by pleading violation of a right conferred by statute, so long as she can allege that the injury
5  she suffered was specific to her." *Id.* The Ninth Circuit applied this principle in *Edwards v First*
6  *Am. Corp.,* 610 F.3d 514 (9th Cir. 2010), finding that a plaintiff who alleged a statutory violation of
7  the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607, had standing despite her
8  inability to allege that she had actually been overcharged for any services.

9  Facebook argues *Edwards* is not controlling here because, in Facebook's view, the Illinois
10 statutory claims advanced by plaintiffs are not viable given the choice of law provisions of the
11 SRRs. That argument puts the merits cart before the standing horse. Plaintiffs' claim is that the
12 SRRs are *not* enforceable and that Facebook has therefore violated the Illinois statutes. Standing to
13 determine *whether* the Illinois law applies and has been violated does not depend on the claim being
14 proven meritorious in the end.

15 Finally, Facebook asserts *Edwards* was simply "wrongly decided" insofar as it endorses
16 standing absent some actual injury beyond the mere fact of a statutory violation. Any argument that
17 *Edwards* should be revisited must be presented to the Circuit court, not here. Accordingly, dismissal
18 for lack of standing would not be warranted.

20  B. Count I—Declaratory Relief re enforceability of SRRs

21 Plaintiffs contend the consent provisions in the SRRs are legally unenforceable as to the
22 putative class of minors because they represent a type of contract into which a minor cannot legally
23 enter under California Family Code §6701, and are therefore *void ab initio.* Alternatively, plaintiffs
24 argue the SRRs are *voidable* under Family Code §6710.[3]

---

[3] The complaint refers to "Family Code §6702," which does not exist. There appears to be no dispute that plaintiffs intended to invoke Family Code §6710, and can be deemed to have done so.

4

Family Code §6700 sets out the general rule:

> Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance under Chapter 2 (commencing with Section 6710) . . . .[4]

Accordingly, while contracts made by minors generally may be disaffirmed (or, in plaintiffs' words, are "voidable"), provided the conditions set out in section 6710 and following sections are met, the basic presumption is that minors *do* have the power to enter into binding contracts except as provided in §6701.

Plaintiffs' arguments largely flow from an opposite, and incorrect presumption, that minors generally do *not* have the power to contract. As articulated during oral argument, plaintiffs contend the rule is a "[m]inor cannot contract," with only "exceptions for necessities." Plaintiffs thus would narrow the circumstances in which minors' contracts are allowed, and would construe *broadly* the prohibitions against certain specific types of contracts described in §6701. This turns statutory construction on its head. Because the general rule is set forth in §6700, it is the exceptions set out in §6701 that must be construed narrowly, if anything. *See Barnes v. Chamberlain,* 147 Cal.App.3d 762, 767(1983) ("Exceptions to the general rule of a statute are to be strictly construed. In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception . . . . One seeking to be excluded from the sweep of the general statute must establish that the exception applies.")

Turning then to the exceptions set out in §6701, plaintiffs have not met their burden to establish their applicability. The statute provides:

> A minor cannot do any of the following:
>
> (a) Give a delegation of power.
> (b) Make a contract relating to real property or any interest therein.
> (c) Make a contract relating to any personal property not in the immediate possession or control of the minor.

Plaintiffs contend the SRRs violate subdivision (a), (c), or both. They acknowledge that the predecessor to subdivision (a) was enacted to preclude minors from authorizing agents to enter into

---

[4] Additional qualifications, relating to marriages of minors, are not pertinent here.

5

additional contracts on their behalf. *See Hakes Inv. Co. v. Lyons*, 166 Cal. 557, 560 (1913) ("it is obvious that the intention of the Legislature . . . . [was to] declare the rule that an infant could not execute contracts through an agent having only a delegated authority executed by the infant."); *see also Morgan v. Morgan*, 220 Cal. App. 2d 665, 674-75 (1963) (holding that a child actor's authorization to his agent to endorse paychecks on his behalf constituted a void delegation of power).

Plaintiffs insist that the provision should not be so narrowly construed as to apply only in cases of formal appointments of agents or other such clear delegations of authority. Even accepting that assumption, plaintiffs have offered no persuasive basis for finding subdivision (a) to be implicated by the SRRs, either generally or with respect to the consent provision plaintiffs are challenging. The consent Facebook users give for use of their names and profile pictures in certain ways on the site simply is not tantamount to appointing Facebook as an agent for users, or to delegating to it any power to be exercised on behalf of those users. While Facebook may obtain "powers" under the SRRs to utilize the names and pictures in certain ways, that is no different from garden-variety rights a contracting party may obtain in a wide variety of contractual settings. Plaintiffs have not shown how it would be a *delegation* of power within the meaning of the statute. Rather, Facebook users have, in effect, simply granted Facebook the right to use their names in pictures in certain specified situations, in exchange for whatever benefits they may realize from using the Facebook site.

Plaintiffs' alternative reliance on subdivision (c) is no more persuasive. They acknowledge that the reference to property "in the immediate possession" of the minor supports a conclusion that the section is primarily intended to address *tangible* personal property. Because they fail to recognize that void contracts are the exception, not the rule, plaintiffs then incorrectly reason that contracts relating to intangible property must fall within subdivision (c). To the contrary, because subdivision (c) is directed at tangible property (as plaintiffs admit), it only renders void certain contracts relating to such property. Regardless of exactly how the rights putative class members hold in their names and profile pictures may be labeled, they cannot be fairly characterized as "personal property not in the immediate possession or control of the minor."

Plaintiffs essentially agree that the names and profile pictures do not fall within the language of subdivision (c). They err in then concluding the SRRs are void under that subdivision, instead of recognizing that because the subdivision does not apply (and neither do the other subdivisions of §6701), the default is the general rule of §6700—"a minor may make a contract in the same manner as an adult . . . ." Accordingly, plaintiffs have shown no basis for finding the SRRs to be *void.*

As noted, plaintiffs alternatively argue the SRRs are *voidable* under Family Code §6710. That section provides:

> Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.

Although this section almost certainly would allow plaintiffs to disaffirm the SRRs, they have never plainly expressed an intent to do so, and they do not dispute that they continued to use their Facebook accounts long after this action was filed. While Plaintiffs argue that a minor may disaffirm a contract without restoring any of the benefits he or she received, they have offered no explanation as to how that principle would somehow retroactively vitiate the consent they had given through the SRRs at the time time their names and profile pictures were used. Thus, the possibility that the named plaintiffs and members of the putative class might rely on §6710 to disaffirm the SRRs and close their Facebook accounts does not render viable any of the claims they have pleaded. Because plaintiffs have offered no facts or legal theories upon which they would be entitled to a declaration the SRRs are unenforceable, Count I must be dismissed.[5]

---

[5] Facebook argues the same result would follow through application of "law of the case," given the decision made by the transferring district in this action to enforce the venue provisions of the SRRs. Because it is unclear whether all of the prerequisites for application of law of the case doctrine are present here, and because it is a flexible doctrine in any event, proceeding to the merits of the arguments is the preferred course.

C. Count II—Declaratory Relief re preemption under Children's Online Privacy Protection Act, 15 U.S.C. §6501-6506 ("COPPA")

Plaintiffs seek declaratory relief that their claims are not preempted under COPPA. Facebook argues there is no existing controversy because it is not presently asserting a COPPA preemption defense in this action. Given Facebook's prior invocation of COPPA, there likely would be a sufficient basis for declaratory relief on the point were there otherwise a live controversy remaining. In light of the disposition of Count I above, however, any declaration in this action regarding possible COPPA preemption would be purely advisory.

D. Counts III and IV—Illinois Right of Publicity Act

Plaintiffs effectively concede that their claims under Illinois law are dependent on a conclusion that the SRRs—which contain a California choice of law provision—are invalid. Accordingly, with the failure of Count I, the claims under Illinois law must also be dismissed.

V. CONCLUSION

The motion to dismiss is granted. Plaintiffs acknowledged at the hearing that the viability of their claims turns on legal arguments, such that no further development of factual allegations would result in a different analysis or outcome, and therefore they do not request leave to amend. A separate judgment will therefore enter.

IT IS SO ORDERED.

Dated: 3/26/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

8